[Civ. No. 25897. Second Dist., Div. One. Aug. 30, 1962.]

A. B. McKINLEY et al., Plaintiffs and Respondents, v. JULES J. LAGAE et al., Defendants and Appellants.

J. F. Goux and John M. Sink for Defendants and Appellants.

W. W. Eschwig for Plaintiffs and Respondents.

LILLIE, J.—Plaintiffs sued defendants for breach of a contract to purchase real property known as "Chimney Rock Ranch," and personal property and appurtenances thereon; damage alleged included a contingent liability of a broker's commission. Affirmative defenses consisted of allegations of defendants' inability to read or understand the English language and fraud and misrepresentation on the part of plaintiffs and the broker. Subsequent to the filing of the above action, Harry Heron, the listing real estate broker, sued plaintiffs McKinley (*Heron* v. *McKinley et al.*) for a commission for having effected the sale to defendants herein. The two cases were consolidated for trial. Judgment in favor of plaintiff for $12,500 was entered in the *Heron* case; no appeal is taken therefrom. Judgment in favor of plaintiffs (McKinley) for $15,830 was entered in the within action from which defendants Lagae appeal.

Appellants raise the following issues: Whether the deposit receipt and escrow instructions are sufficiently certain to constitute a valid contract for the sale of land and the personal property and appurtenances thereon; whether plaintiffs must and did prove their ability to perform under the contract of sale; and whether plaintiffs are entitled to recover as damages the broker's commission and loss of rent by reason of the termination of a lease in reliance on defendants' agreement to buy.

To sustain their claims appellants have presented an extended set of facts based primarily upon their own testimony. However, keeping in mind the rule that the evidence must be viewed in a light most favorable to the judgment, we find in

the record ample evidence in support of the trial court's findings and conclusions. Plaintiffs, Mr. and Mrs. McKinley, were owners of "Chimney Rock Ranch" and had been operating the same for cattle and farming since 1949. Defendants, Mr. and Mrs. Lagae, are natives of Belgium. Jules Lagae has an extensive university education and holds a Doctor of Laws Degree; he also studied engineering. He owned a 75-acre farm in Algeria where he raised oranges, grapes, cows and cattle. In Belgium he had holdings, part of which he sold to finance his trip to the United States. The evidence shows him to be somewhat experienced in the matter of buying and selling real property; that most of his conversations relative to the ranch and his finances were in English; and that his calculations and discussions displayed a more than usual knowledge of money matters. (The trial court found defendants were able to read and understand English and to discuss and understand the within transaction. [(Finding of Fact II, p. 4; Memorandum of Opinion, p. 3.) Appellants do not challenge this finding.]) On August 2, 1958, McKinley gave to Heron Realty a written listing (Ex. 2) to effect the sale of "Chimney Rock Ranch" setting forth its name, location and acreage, available water, and other detailed information. Some time prior to this date, defendants had twice visited "Chimney Rock Ranch" with a representative of another real estate office. They spent approximately two hours on it in December 1957, and approximately two and one-half hours in September 1958. Thereafter on October 17, 1958, in looking for a house to buy, defendants were given a copy of the ranch listing by Mr. Snyder, agent of Heron Realty, and they, being interested, asked him to arrange for them to see it again. Thus, on October 21, 1958, he took defendants to "Chimney Rock Ranch"; McKinley "showed them all around the ranch, the boundaries where the fences were, and spent the day ('all day') going over the place with them." Snyder testified defendants took an extended tour through the house and barns, and drove all over the ranch and were shown a dam, pasture, roads and boundaries. At the time, defendants asked McKinley if they could lease the ranch with an option to buy; McKinley replied that the ranch was already leased—"you will have to buy it if you want it." The ranch was in fact leased at that time to one Goodall. The next day, October 22, defendants made an offer to McKinley; after certain negotiations relative to payment and terms, McKinley accepted the offer and on October 23, 1958, plaintiffs and defendants signed the "Deposit Receipt—California Real Estate

Association Standard Form." On October 24, Lagae and McKinley signed a standard form of Escrow Instructions prepared by the First Western Bank and Trust Company. Thereupon, defendants deposited in escrow a down payment of $16,250 as provided in the escrow instructions. However, before an inventory of personal property (as required in the deposit receipt) could be made, a legal description (as required in the escrow instructions) could be completed, and the escrow proceeded to a close, defendants, claiming this sum was deposited only for the purpose of securing an option, served upon McKinley a Notice of Rescission and Demand for Return of Down Payment on grounds of fraud, misrepresentation and their inability to understand English. (The trial court was not satisfied that defendants understood they had an option instead of a contract of purchase; and it further found no wilful fraud, and that no material misrepresentation as to the ranch or its water supply and its ability to carry a certain number of head of cattle, was made. (Memorandum of Opinion, pp. 2, 3.))

Appellants contend that there was no valid contract of sale because the deposit receipt and escrow instructions are uncertain as to the real and personal property to be conveyed. ■ The listing agreement, deposit receipt and escrow instructions, clearly part of the same transaction, must be construed together as the contract of sale. (*Shattuck* v. *Chase,* 86 Cal.App.2d 810 [195 P.2d 475]; *Ontario Downs, Inc.* v. *Lauppe,* 192 Cal.App.2d 697 [13 Cal.Rptr. 782].) The basic question is whether it is sufficiently definite to identify the real and personal property to be sold. ■ "The material factors to be ascertained from the written contract are the seller, the buyer, the price to be paid, the time and manner of payment, and the property to be transferred, describing it so it may be identified. (*Breckinridge* v. *Crocker, supra,* 78 Cal. 529 [21 P. 179]; *Grafton* v. *Cummings,* 99 U.S. 100 [25 L.Ed. 366]; *O'Donnell* v. *Lutter, supra,* 68 Cal.App.2d 376 [156 P.2d 958].)" (*King* v. *Stanley,* 32 Cal.2d 584, 589 [197 P.2d 321].)

■ However, " '[T]he law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained." (*California Lettuce Growers* v. *Union Sugar Co.,* 45 Cal.2d 474, 481 [289 P.2d 785, 49 A.L.R.2d 496]; *Ontario Downs, Inc.* v. *Lauppe,* 192 Cal.App.2d 697 [13 Cal.Rptr. 782].)

It is obvious from a reading of the documents that it was the intention of the parties, not that the personal property be identified or described therein in detail, but that it be ascertained and determined by the time of sale by means of a complete inventory which they contemplated taking and in fact started. Appellants' complaint seems to be that the inventory was never taken, and that the testimony shows that McKinley was unable at the trial to describe all of the personal property and appurtenances to be conveyed. However, a complete answer to this lies in the absence of any showing that the personal property could not have been ascertained or identified at the time of sale, and in the proof that a complete inventory thereof was frustrated by defendants' own conduct. The deposit receipt described the property being sold as "The Chimney Rock Ranch together with all appurtenances; Real Property, and personal property as declared in sale as on property at this moment"; and provided that "A complete inventory will be included in sale." It is clear from the evidence that the parties fully intended to take an inventory and a bona fide effort was made to do so, but that. it was not completed, not because the parties could not or would not ascertain the personal property and appurtenances to be conveyed with the land, but because of the defendants' request to again view the ranch, and their immediate subsequent repudiation of the contract. On October 27, Snyder, plaintiffs and defendants returned to "Chimney Rock Ranch"; "[T]he purpose of the trip was to take an inventory of the personal property." They went into the house and discussed the property and started the inventory, but before it could be completed defendants interrupted by requesting that they again be taken over the ranch; they left the house and again toured the land during the rest of the day on horseback and by jeep. Immediately thereafter, on October 30, defendants served their notice of rescission on plaintiffs—before the inventory could be completed. Appellants point up various portions of McKinley's testimony in an effort to show the difficulty he had at the trial in identifying the personal property. While the record may show that he was unable to recall from memory from the witness stand every item that would have been conveyed with the land to defendants, it does not show that the personal property and appurtenances could not have been ascertained, or were incapable of being identified, either at the time the inventory was started, in the course of the escrow proceedings, or at the time of sale; nor does the evidence

show that appellants ever requested or demanded a complete inventory after October 27 and prior to the time they executed their notice of rescission (in fact, the notice of rescission was served long before the time for closing of escrow and before the "complete inventory" specified in the deposit receipt was required). The issue is not whether McKinley could identify or describe the property at the time of trial but whether it could have been ascertained at the time of sale, and there is no showing in the record that it could not have been. Further, appellants, having repudiated the contract before the closing of the escrow, thereby released plaintiffs from any obligation to continue to prepare or deposit a complete inventory. (*Guerrieri* v. *Severini*, 51 Cal.2d 12 [330 P.2d 635].)

Appellants also contend that the contract of sale was uncertain in that the documents failed to establish a legal description of the real property and provide a basis from which the land could be ascertained. The listing agreement, deposit receipt and escrow instructions, construed together, furnish a means of identifying the land referred to therein; further, in answer to the argument that "Chimney Rock Ranch" did not have a unitary background and defendants did not know what they were buying, the evidence reveals that they had every opportunity to inspect the ranch, did so, and in fact knew the nature, location and extent of the land and its boundaries before signing the deposit receipt.

 While it is true that an agreement for the sale of real property must describe the land so that it can be identified with reasonable certainty, "a description fulfills the test of reasonable certainty if it furnishes the 'means or key' by which the description may be made certain and identified with its location on the ground. (*Gordon* v. *Perkins*, *supra*, 108 Cal. App. 336, 340 [291 P. 644].)" (*Beverage* v. *Canton Placer Mining Co.*, 43 Cal.2d 769, 774 [278 P.2d 694].) The listing agreement describes "Chimney Rock Ranch" as follows: "Location: Paso Robles—6 miles west on Adelaide Road . . . Acreage: Approximately 4700 acres. Water: Year around —San Marcus Creek, springs—no wells, 250 acre foot reservoir. . . ." The deposit receipt provides for the sale of "Chimney Rock Ranch" situated in Paso Robles in the County of San Luis Obispo. The escrow instructions describe the property as located in San Luis Obispo County, "known as the 'Chimney Rock Ranch.' Legal description to be approved and attached hereto." (However, the evidence shows that

before a legal description could be compiled, approved and attached to the escrow instructions, as required therein, defendants repudiated the contract.) Moreover, plaintiffs alleged in their complaint that these instruments (listing agreement, deposit receipt, escrow instructions) had reference to "Chimney Rock Ranch," and attached thereto a complete legal description of the property. (Ex. C.) While the description contained in the contract of sale is not a preferred one, it is obvious it was the intention of the parties to have the specific boundaries of the ranch, therein described by acreage, name and location, declared and set up by means of a "legal description to be approved and attached" to the escrow instructions before the close of escrow (such legal description was subject to compilation and was completed as shown in Exhibit C), and it may not be concluded that the documents constituting the contract do not furnish a means or key for identification. (*Preble* v. *Abrahams,* 88 Cal. 245 [26 P. 99, 22 Am.St.Rep. 301] ; *Beverage* v. *Canton Placer Mining Co.,* 43 Cal.2d 769 [278 P.2d 694].) ▮ "The applicable principle is that that is certain which can be made certain [citations] by additional allegations [citations] and parol evidence in proof thereof, admitted not for the purpose of furnishing or supplying a description [citation] but for the purpose of applying the given description to the earth's surface, thereby identifying the property. ▮ [Citations.] Courts have been most liberal in construing executory contracts for the sale of real estate and have sought, as far as is consistent with the above established rules, to give effect to the intention of the parties in applying descriptions to property. [Citations.]'' (Pp. 774, 775.) ▮ Moreover, whether the evidence is sufficient to show that the land could be identified with reasonable certainty is a question of fact for the trial judge (*United Truckmen, Inc.* v. *Lorentz,* 114 Cal.App.2d 26 [249 P.2d 352]), and here he found the evidence to be sufficient in this particular. ▮ We will not interfere with his determination thereon. Further, defendants visited the ranch on three separate occasions prior to their negotiations with Mr. Snyder, and they had every opportunity to, and did, inspect the land, its extent and its boundaries; and the trial court so found (Memorandum of Opinion, p. 3). Defendants were shown the boundaries and knew on the ground the extent of the land they were buying.

▮ As to appellants' argument relative to the statute of frauds, the record shows that no such defense was advanced

in the lower court, no issue relating thereto was raised by the pleadings or declared and pursued at the trial, and no objection was made by defendants to the introduction of the evidence proving the written contract of sale. Defendants contended only that no contract existed because they understood from plaintiffs and the broker that the documents constituted an option, not a contract of sale, and that they were induced by fraud and material misrepresentations to enter into it. The plea of the statute of frauds is urged for the first time on appeal. Under the circumstances, we deem this to constitute a waiver of their right now to rely upon the statute. (*Howard* v. *Adams,* 16 Cal.2d 253 [105 P.2d 971, 130 A.L.R. 1003]; *Rutland, Edwards & Co.* v. *Cooke,* 44 Cal.App.2d 258 [112 P.2d 287]; *Aaker* v. *Smith,* 87 Cal.App.2d 36 [196 P.2d 150].)

As their second contention, appellants claim that plaintiffs failed to prove their ability to perform under the contract— to convey marketable title at the time escrow would normally have closed; they argue that plaintiffs proved only that McKinley owned a one-half interest in the ranch, and failed to show whether Helen McKinley owned any interest.

Defendants' notice of rescission, which amounted to a positive repudiation of the contract by them, had the effect of giving plaintiffs the right of election—to wait until the time of performance arrived, or to then act upon the notice and treat it as a final assertion that defendants were no longer bound by the contract and as a wrongful renunciation of the contract relationship into which they had entered. "If he elects to pursue the latter course, it becomes a breach of contract, excusing performance on his part and giving him an immediate right to recover upon it as such. Upon such election the rights of the parties are to be regarded as then culminating, and the contractual relation ceases to exist, except for the purpose of maintaining an action for recovery of damages. (6 Cal.Jur. 458-460; *Walker* v. *Harbor Business Blocks Co.,* 181 Cal. 773 [186 P. 356].)" (*Atkinson* v. *District Bond Co.,* 5 Cal.App.2d 738, 743, 744 [43 P.2d 867]; *Guerrieri* v. *Severini,* 51 Cal.2d 12 [330 P.2d 635].) The record shows that plaintiffs elected to treat the repudiation as a breached contract. It is clear from a reading of the documents constituting the contract of sale that plaintiffs were obligated only to be in a position to convey to defendants such title as was called for therein before time for the closing of the escrow. Defendants' repudiation of the contract before that time excused further performance by the McKinleys (*Diamond* v.

*Huenergardt,* 175 Cal.App.2d 214 [346 P.2d 37]; *Grimes* v. *Steele,* 56 Cal.App.2d 786 [133 P.2d 874]); thus not only were plaintiffs thereafter relieved from tendering title but it was unnecessary for them to prove they had the ability to convey marketable title at the time of the close of escrow. Of significance is the fact that while defendants' notice of rescission set out grounds of fraud and misrepresentation, nowhere therein did it make reference to or contain any apprehension concerning title. While appearing in the pleadings, the present issue relating to conveyance of title seems to have been an afterthought. The trial court appropriately noted in its Memorandum of Opinion that Jules Lagae testified that two things made him dissatisfied with the transaction, "mainly, the 'capacity of the ranch' and two, his inability in financing the cattle and the ranch too. He testified very positively that these were the only things that concerned him on October 30, 1958, when he had the Notice of Rescission prepared and filed." (P. 3.) Nor did defendant Lagae at any time in his testimony complain that plaintiffs could not have conveyed title at the close of escrow or that this was any consideration in repudiating the contract.

However the evidence shows that the McKinleys had the ability to convey title, and that within five months of the date of contract of sale they actually did so, conveying title to one Blythe. The record reveals that on March 10, 1959, A. B. and M. L. McKinley, his wife, and Helen McKinley, executed a grant deed on the property to A. B. McKinley & Sons, Inc., a corporation; that A. B. McKinley was A. B. McKinley & Sons, Inc.; that on April 10, 1959, A. B. McKinley & Sons, Inc. executed its grant deed to Harry C. and Bruce W. Blythe to whom the property was sold for $250,000. We conclude that the trial court's finding that plaintiffs had the ability to deliver marketable title to and ownership of the real property to defendants (Finding of Fact III, p. 2), is supported by the evidence.

Appellants' last contention is that plaintiffs sought and obtained a different measure of damages (the full broker's commission plus the rent which tenant Goodall might have paid plaintiffs until the second sale) from that permitted under the rule for breach of contract for sale of realty set forth in *Royer* v. *Carter,* 37 Cal.2d 544 [233 P.2d 539] (the difference between the contract price and the market value of the land as of the date of breach, plus any additional ex-

penses of resale which are necessary to preserve for the vendor the benefits of his bargain).

■ $12,500 was the amount of broker's fee or commission for the within transaction awarded by the trial court to Harry Heron (*Heron* v. *McKinley*), for which plaintiffs were held liable. Plaintiffs are required to pay this commission to Heron in the form of a judgment; this is an allowable item (*Beason* v. *Griff,* 127 Cal.App.2d 382 [274 P.2d 47]) plus interest from the date the broker became entitled to his fee. (*McDonald* v. *Bernard,* 87 Cal.App. 720 [262 P. 431].)

■ The balance of the within judgment, the sum of $3,330, represents the loss to plaintiffs of rent monies by reason of a termination by plaintiffs of their lease with Goodall, effected as a condition of the sale of the property to defendants and in reliance upon their agreement to purchase the property. The evidence shows that at the time the contract of sale was entered into by the parties "Chimney Rock Ranch" was being leased to Goodall who was obligated under the lease agreement to pay a rental of $8,000 a year; that relying upon the contract of sale with defendants, plaintiffs, in order to deliver the premises to defendants unencumbered by lessee rights, arranged for a termination of the lease by paying a certain sum to the lessee in exchange for the surrender of the premises; that from the date of termination of the lease to the time the ranch was sold the second time a period of five months elapsed; that had not the lease been terminated, prorated under the lease agreement, the amount of $666 per month would have been paid as rent for the five-months' period; and that accordingly, plaintiffs lost the total sum of $3,330 rental during that period. This is an item of damage to which plaintiffs are entitled.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied September 24, 1962, and appellants' petition for a hearing by the Supreme Court was denied October 24, 1962.