[Civ. No. 21597. First Dist., Div. Two. July 30, 1964.]

WILLIAM A. ALLEN et al., Plaintiffs, Cross-defendants and Appellants, v. JOHN T. ENOMOTO et al., Defendants, Cross-complainants and Respondents.

Elton F. Martin for Plaintiffs, Cross-defendants and Appellants.

Truce & Veal, Harlan K. Veal and Johnson C. Montgomery for Defendants, Cross-complainants and Respondents.

AGEE, J.—On January 29, 1961, plaintiffs and defendants entered into a deposit receipt agreement wherein defendants agreed to sell and plaintiffs agreed to buy a house and lot located on Cervantes Road, near Redwood City, San Mateo County. Plaintiffs made a deposit of $2,700 on the purchase price of $28,250 but thereafter refused to complete the transaction on the ground that the lot area was less than represented.

The trial court held that the agreement was binding upon plaintiffs and awarded damages to defendants in the amount of the deposit. Plaintiffs appeal from the judgment.

Appellants state their position as follows: "Unless the deficiency in the quantity of the property to be conveyed is insignificant or if it is clear from the agreement that the parties did not consider the quantity of land important, a purchaser is entitled to the quantity of property which he agreed to purchase."

On the other hand, appellants acknowledge that "The question of whether the failure to convey the agreed quantity is a material and substantial failure under the circumstances is of course a question of fact." We shall, as we must, view the evidence in the light most favorable to the judgment of the trial court.

Allen (appellant husband) saw a "For Sale" sign on the subject property and contacted salesman Ross at the real estate office which had the listing.

At the top of this listing, following the printed words "DESCRIPTION OF PROPERTY (From tax-bill, deed or other source)," are the typed words "¾ Acre Portion of the Harwood Property Known as 200 Cervantes Road." Farther down, under the printed heading "DETAILS OF PROPERTY" and opposite the printed words "Lot size" are the typed figures "100 x 168."

The variance is obvious. A "100 x 168" lot is a much smaller area than a "¾ Acre" lot. A land surveyor called by appellants testified that the lot actually contains approximately .537 acre, which is midway between the two areas stated.

The trial court found "That on at least two occasions prior to January 29, 1961, said listings were shown to and reviewed by Mr. Allen. That Mr. Allen was familiar with the terms and contents thereof." The trial court also found that "Mr. Allen was and is an engineer." The court concluded "That at the time of the execution of said [deposit receipt]

agreement, the Allens were or should have been aware that said real property might or might not consist exactly of three-quarters of an acre. . . . " Allen's explanation was that "I think I disregarded too much the dimensions."

Allen's failure to make any objection or ask any question of Ross concerning the variance on the listing agreement is significant and bears out the trial court's conclusion that the appellants and respondents "entered into a valid and binding agreement in writing whereunder all of the property owned by the Enomotos at 200 Cervantes Road, Redwood City, California, *regardless of quantum,* was agreed to be conveyed to the Allens . . . " (italics added).

Appellants now contend that the listing agreement should be considered only for the limited purpose of showing the agency of Ross. However, appellants introduced the agreement in evidence without limitation as to its purpose. It was therefore usable for any purpose. (*Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 800 [117 P.2d 841]; *Wicktor* v. *County of Los Angeles,* 177 Cal.App.2d 390, 405-406 [2 Cal. Rptr. 352]; Witkin, Cal. Evidence, p. 741.)

Allen was aware that the boundaries of the lot were somewhat uncertain. He went out on the property on three or four occasions before signing the deposit receipt agreement. On the first of these occasions he was accompanied by Ross. Allen testified that Ross told him that the lot was bounded on the east by Cervantes Road and on the west by Hermosa Road; that the north boundary was indicated by a white stake driven in the ground; that "he [Ross] said these three boundaries were *fairly well established*"; that "I asked about the front [south] boundary . . . and Bob Ross pointed down the hill and said the front boundary is down between those two trees." (Italics added.)

Allen never talked to Enomoto concerning the property and it is evident that Ross was indicating an uncertainty as to the south boundary when he stated to Allen that the *other* three boundaries were "fairly well established."

The City and County of San Francisco owns the land adjacent to the south boundary and its water department maintains large pipes thereon as conduits for water from Hetch Hetchy Reservoir. It is not used for any other purpose. The city had issued a permit allowing the use of a small space (180 square feet) adjacent to the driveway on the subject property as a turnaround. This benefit is appurtenant to the subject property.

The evidence shows that the city's land slopes steeply downward from the south boundary line of the subject property and that it would be of little or no use as a part of the homesite in question.

The trial court found ''That Mr. Allen had no use for the [subject] property, agricultural or otherwise, which required specifically that there be three-quarters of an acre of land in said parcel. Rather, Allen intended to use said property as a residence for himself, his wife and children, only.'' This finding is amply supported by the evidence.

Appellants call attention to the fact that, while the deposit receipt agreement repeats the description of the property as contained in the listing agreement, i.e., ''¾ Acre Portion of the Harwood Property Known as 200 Cervantes Road,'' it does not repeat the dimensions of the lot.

However, Allen was with Ross when the latter was filling out the printed form of ''Deposit Receipt'' and there is no evidence of any discussion at that time as to dimensions. The evidence is that the discussion was with reference to the financing of the sale and the warranties to be required of respondents as to the functioning of the heating equipment, plumbing fixtures and kitchen equipment.

█ Also, there was no space on the ''Deposit Receipt'' allotted for the purpose of stating the ''Lot size.'' Thus, the uncertainty in this respect remained. Under such circumstances, the listing agreement and the deposit receipt agreement, being part of the same transaction, should be construed together as the contract of sale in order to ascertain the reasonable intentions of the parties. (*McKinley* v. *Lagae,* 207 Cal.App.2d 284, 289 [24 Cal.Rptr. 454].)

█ Here it is clear that, as the trial court found, ''Enomoto intended to sell and Allen intended to buy all of the right, title and interest of every nature whatsoever, fee or otherwise, of Enomoto in and to the residence and real property comprising and known as 200 Cervantes Road, Redwood City, California.'' The size of the lot area was not a material or substantial factor in the transaction.

█ Appellants do not contend that the sale price was unfair. They admit that ''At all times pertinent, the value of the property to the respondents *and its fair market value* was the sum of $28,250.00.'' (Italics added.) Appellants' argument is that respondents agreed to convey three-fourths of an acre and that, inasmuch as they only owned .537 acre, the price to appellants should be reduced.

Allen testified that, when he went to the title company on February 16, 1961, to sign the closing papers, he learned that the county assessor's records "showed point five three acres for evidence for tax purposes." Allen thereupon demanded a reduction in the purchase price. When respondents refused, appellants filed the instant action, praying *inter alia* that respondents be ordered to convey the property to them at "a just deduction from the purchase money . . . on account of said deficiency of quantity, . . . "

We conclude that the record herein supports the trial court's conclusion that appellants intended to buy and respondents agreed to sell "all of the property owned by the Enomotos at 200 Cervantes Road . . . regardless of quantum" and that appellants are liable for the damages resulting to respondents from appellants' refusal to complete the sale at the agreed purchase price.

*Damages.* Section 3307 of the Civil Code provides that "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him."

The "value of the property" to Enomoto is to be determined as of the date of the breach of the agreement by Allen. (*Royer* v. *Carter,* 37 Cal.2d 544, 549 [233 P.2d 539].) This breach occurred upon the failure of Allen to complete the sale within 60 days after the execution of the agreement. Such period expired on March 30, 1961.

The *only* testimony as to "the value of the property" as of the date of breach is that of an expert witness, *produced by Enomoto.* He testified that he had appraised the property on March 22, 1960, at $27,500 and that it had increased in value to $28,500 by March 1961.

On August 7, 1961, Enomoto sold the property to a Mr. and Mrs. Allgrove at the same purchase price as that agreed to by Allen, $28,250. There is therefore no basis in the evidence for any recovery of damages by respondents from appellants under the provisions of section 3307.

As stated in *Royer* v. *Carter, supra,* at page 550: "Thus in a case where the property is sold at the market value and that value remains constant until after the breach, and the property is then resold at the same price, the vendor could recover no damages under section 3307."

The Supreme Court recognized, however, that "the

vendee's breach may make it necessary for the vendor to incur additional expenses to realize the benefit of his bargain'' and that "injustice could result if the vendor were not allowed to recover damages for additional expenses caused him by the vendee's breach.'' It concluded that "When such additional expenses are the natural consequence of the breach, they may be recovered in addition to those provided for in section 3307.'' (P. 550.)

The trial court in the instant case found that the resale (to the Allgroves) was made "within the shortest period of time possible'' and no attack is made upon this finding. ▇ Fire insurance, mortgage interest and real property taxes during said period are properly allowable as such "additional expenses.'' These total $403.90.

▇ Respondents accepted the Allgrove home as part payment and thereby incurred expenses totaling $449.41, the chief items being a charge of $210 for refinancing the loan on that property and a premium of $185.60 for a title insurance policy. These also are recoverable as "additional expenses'' which were incurred as the result of appellants' breach. (*Royer* v. *Carter, supra.*)

▇ The trial court erred in allowing reasonable rental value of the subject property for the period between Allen's breach and the resale to the Allgroves. The record indicates that this property was unoccupied at all times involved herein and there is no evidence upon which a finding could be made that Enomoto sustained any loss of rent or suffered any deprivation of use of the property during the period in question.

▇ Enomoto accepted the Allgrove property at a valuation of $18,750. He sold it some three months later for $17,950, a loss of $800. He also incurred expenses on this property while holding it for resale and in making such resale.

These items are not recoverable under the facts presented herein. Allen's liability to Enomoto for "additional expenses,'' within the scope of *Royer* v. *Carter, supra,* is limited to the period ending with the resale of the subject property to the Allgroves on August 7, 1961, and the amount of such liability should be limited to those damages directly resulting from such resale. Whatever Enomoto did with the Allgrove property after its transfer to him was his responsibility and not Allen's.

Respondents have not attempted on this appeal to justify

their retention of the deposit upon the ground of forfeiture or liquidated damages or upon the ground that such deposit constituted the consideration for the execution of the sale agreement. Any such contention would be without merit. (*Freedman* v. *Rector, Wardens & Vestrymen,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1]; *Caplan* v. *Schroeder,* 56 Cal. 2d 515 [15 Cal.Rptr. 145, 364 P.2d 321].)

Respondents' recovery is reduced to the sum of $853.31 and the lower court is directed to modify the judgment accordingly. Each side shall bear its own costs on appeal.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied August 28, 1964, and respondents' petition for a hearing by the Supreme Court was denied September 24, 1964.