226 So.2d 418 (1969)
G.W. POPWELL and J.L. Popwell, Appellants,
v.
Arthur B. ABEL, Appellee.
No. 1442.
District Court of Appeal of Florida. Fourth District.
September 19, 1969.
*419 Howard J. Falcon, Jr., and James R. Stewart, Jr., of Wood, Cobb, Robinson, Falcon & Letts, West Palm Beach, for appellants.
*420 Madison F. Pacetti of Caldwell, Pacetti, Barrow & Salisbury, Palm Beach, for appellee.
WALDEN, Judge.
Plaintiffs, who owned and operated a farm consisting of approximately 1964 acres located near Americus, Georgia, employed an auction company to sell their land. At the auction, held in the fall of 1963, defendant was the high bidder.
Defendant executed a contract to purchase the farm for $303,000 and delivered his check in the amount of $50,000 as a down payment. Six days later, before presentment, he stopped payment on the check.
Plaintiffs brought suit in two counts. Count I sought recovery on the check given as a down payment. It alleged that the check had been executed and given to plaintiffs, but upon presentment had been dishonered. Additional allegations were made that notice of presentment and dishonor had been given to defendant and that the check had thereupon been protested for nonacceptance.
In response to a motion by defendant, the trial court dismissed Count I. The order stated that "this case falls within the Contemporaneous Instrument Rule, and is governed by the case of Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538, 6 A.L.R. 2d 1395," since the check, as "an integral and inseparable part" of the contract alleged in Count II, could not be sued upon independently.
Count II is based upon the breach of contract of sale. The trial court struck portions of Count II as alleging improper elements of damage.[1] As a result, although the final judgment concluded that the defendant had breached the contract to purchase, plaintiff's damages were assessed as naught, since the trial court held the sole measure of damages to be the difference in the value of the property on the date of the breach as compared with the date of sale.
Initially we are compelled to consider the motion to dismiss granted by the trial court as to Count I. It is elementary at this state of our judicial development that for the purpose of a motion to dismiss a cause of action all well pled allegations of the complaint are accepted as true.[2] Following this proposition, the trial judge must only determine, as a matter of law, whether the complaint states a cause of action.[3]
Furthermore, matters of contract may be raised as an affirmative defense,[4] *421 but such affirmative defense may not be asserted as the grounds for a motion to dismiss even though such available defenses may exist and a bar to the action may appear on the face of the complaint.[5]
The "contemporaneous instrument (or transaction) rule" is primarily a rule of construction or interpretation with regard to contracts.[6] Where one instrument is given contemporaneously with another, stated simply, as part of the same transaction and each refers to each other, then they should be considered together in determining their meaning and effect.[7] Contemporaneous in this sense has been interpreted as "so approximate in time as to grow out of, elucidate and explain the quality and character of the transaction, or an occurrence within such time as would reasonably make it part of the transaction." Elsberry Equipment Co. v. Short, 1965, 63 Ill. App.2d 336, 211 N.E.2d 463, 468. This rule of construction is also part of our Commercial Code,[8] F.S. 1967, Section 673.3-119, F.S.A. It is noted the rule will in no way defeat the negotiability of an instrument.[9] Viewing the contemporaneous instrument rule in this light, it is difficult for us to see how the trial court could use this rule of interpretation as a basis for a motion to dismiss the plaintiff's cause of action.
We don't see any reason why an instrument such as the check herein could not be sued upon independently of the contract. Although the decisional law in Florida is scant on this subject, our sister states have held that the note or check may be sued upon independently of the contract.[10] In Hubby v. Willis Agency, 1955, 131 Colo. 565, 283 P.2d 1080, the Colorado Supreme Court held in an action involving a real estate purchase agreement where a promissory note was given in downpayment, that a downpayment note could be sued upon and "it was not necessary for plaintiff to plead the contract of purchase and sale in its complaint," ibid p. 1082, although the contract was introduced as evidence. Also in Schlosberg v. Shannon & Luchs Co., D.C. Mun.Ct.App. 1947, 53 A.2d 722, a check was given as downpayment on a real estate purchase agreement and the defendant stopped payment on check and breached the contract. The District of Columbia appellate court allowed a suit on the check independent of the contract to purchase. And the Florida Supreme Court held it was error to strike defense to a suit on a note which raised a contract to purchase stock and a subsequent transaction as part thereof. Johnson v. Smith, Fla. 1956, 84 So.2d 722.
Therefore, we feel that an action on a check may be pursued separately from a contract to which it relates. As a result, the trial court erred in granting the defendant's motion to dismiss grounded upon the contemporaneous instrument rule as to Count I and we reverse. Upon remand the *422 proper place for defendant to assert his defenses, if any, based upon contemporaneous instruments would be in his answer.
The other ground upon which we reverse is the erroneous ruling by the trial court that, as stated in the final judgment, the "measure of damages is the difference of the value of the property on the date of the breach, as compared with the date of sale."
In reaching this conclusion, which required the striking of paragraph 11 of the complaint, supra, the court relied upon Pembroke v. Caudill, supra. Defendant correctly points out that Pembroke noted, "the measure of the seller's damage ordinarily [is] in such cases the difference between the agreed purchase price and the actual value of the property at the time of the breach of the contract of purchase, less the amount paid."
But a careful reading of Pembroke reveals that, while stating the general rule, it implicitly recognized the possibility of additional special damages when it considered and rejected in that case a claim for a broker's commission (because the broker in Pembroke was shown not entitled to a commission); and a claim for damages by reason of possession being in the purchaser.
In Pembroke the court merely concluded that the only damages in this case that could have reasonably flowed from the breach of contract were the profits anticipated from the sale, but at the same time recognized that a court will give effect to such actual damage as may be pled and proved. The guiding principle in determining proper elements of damage in an action for breach of contract was recognized in Pembroke as just compensation; "placing the injured party in as advantageous a position as he would have occupied had his contract not been broken.[11]
In the ordinary case where a purchaser of land breaches his contract to buy, the difference between the value of the land on the date of breach as compared with the date of sale would restore the vendor, but the vendor may still allege and prove as proper elements of damage all those damages contemplated by the parties which are a natural and proximate result of the breach.[12] Therefore, the trial court erred in striking paragraph 11 of Count II and we reverse.
The final judgment herein is vacated, and the case is remanded to the trial court for proceeding not inconsistent with this opinion.
Reversed.
REED and OWEN, JJ., concur.
NOTES
[1] "11. Because of the Defendant's breach of the contract as alleged in Paragraph 10. above, the Plaintiffs have suffered severe damage. The defendant's failure to perform the contract prevented the Plaintiffs from planting certain crops which would have yielded substantial profits, required the Plaintiffs to incur extra expense and labor when planting was eventually instituted, reduced the yield of such planting as was eventually instituted, caused the Plaintiffs to fail to carry out certain soil building procedures, caused the plaintiffs to incur extra expense in the purchase of farm machinery to replace farm machinery sold by the Plaintiffs immediately after the Defendant executed the purchase contract, and caused the Plaintiffs to incur expense and commission to the auction company for the auction which took place on the date of sale. By reason of the above alleged breach of the said contract, the Plaintiffs have suffered damages in excess of the sum of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS."
[2] Ahrens v. Hayworth, Fla.App. 1966, 189 So.2d 163; Russell v. Community Blood Bank, Inc., Fla.App. 1966, 185 So.2d 749, reversed on other grounds Fla., 196 So.2d 115; Pourtless v. Suwannee Hotel Co., Fla.App. 1966, 184 So.2d 512; Curcie Bros., Inc. v. Caruthers, Fla.App. 1966, 183 So.2d 594, quashed on other grounds 195 So.2d 545; Lake Erie Chemical Co. v. Stinson, Fla.App. 1966, 181 So.2d 587; Simon v. Tampa Electric Co., Fla.App. 1967, 202 So.2d 209.
[3] Connolly v. Sebeco, Inc., Fla. 1956, 89 So.2d 482.
[4] Rule 1.110(d) F.R.C.P., 30 F.S.A.
[5] Croft v. Young, Fla.App. 1966, 188 So.2d 859. However, please note that effective Jan. 1, 1967 this rule has been changed. See Rule 1.110(e), F.R.C.P. 1969.
[6] 11 Am.Jur.2d 670.
[7] Taylor v. America National Bank of Pensacola, 1912, 63 Fla. 631, 57 So. 678.
[8] "673.3-119 Other writings affecting instrument

"(1) As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument.
"(2) A separate agreement does not affect the negotiability of an instrument."
[9] Ibid.
[10] Bible v. Webb, 1927, 192 Wis. 545, 213 N.W. 309; Schottenstein v. De Voe, 1948, 83 Ohio App. 193, 82 N.E.2d 552; Andresen v. Simon, 1927, 171 Minn. 168, 213 N.W. 563; Hinsch v. Mothorn, 1927, 44 Idaho 539, 258 P. 540; Mitchell v. Ralph D. Cohn, Inc., D.C.Mun.Ct.App. 1947, 52 A.2d 631; Horton v. Hedberg, 1960, 143 Colo. 62, 351 P.2d 843; Mulcahy v. Gagliardo, 1919, 39 Cal. App. 458, 179 P. 445.
[11] Pembroke v. Caudill, 1948, 160 Fla. 948, 37 So.2d 538, 6 A.L.R.2d 1395; this principle has been expressed in various forms. Downing v. H.G. Smithy, Co., D.C.Mun.Ct.App. 1956, 125 A.2d 272, held that a defaulting purchaser is liable for such damages as are a natural consequence of his breach. In accord with this principle, the court in McKinley v. Lagae, 1962, 207 Cal. App.2d 284, 24 Cal. Rptr. 454, found plaintiffs are entitled to recover as damages the broker's commission and loss of rent by reason of the termination of a lease in reliance on defendants' agreement to buy.
[12] Poinsettia Dairy Products, Inc. v. Wessel Co., 1936, 123 Fla. 120, 166 So. 306, 104 A.L.R. 216; Atlanta & St. A.B. Ry. Co. v. Thomas, 1910, 60 Fla. 412, 53 So. 510; Olin's, Inc. v. Avis Rental Car System of Fla., Inc., Fla.App. 1965, 172 So.2d 250, see generally 9 Fla.Jur., Damages, §§ 30, 31.