[Civ. No. 12693. Third Dist. July 14, 1972.]

SOFIA ADA KUDOKAS, Plaintiff, Cross-defendant and Appellant, v. ANTANAS BALKUS et al.,
Defendants, Cross-complainants and Appellants.

748

## COUNSEL

T. J. Labhard for Plaintiff, Cross-defendant and Appellant.

McConnell, Backus & Carson and Malcolm McConnell for Defendants, Cross-complainants and Appellants.

## OPINION

**FRIEDMAN, Acting P. J.**—Defendants contracted to buy a West Sacramento motel from plaintiff, Sofia Kudokas, went into possession and operated the motel. After several years defendants defaulted in their payments but refused to surrender possession. Plaintiff filed this action to recover and quiet title to the motel, its furnishings and equipment. Defendants cross-complained, charging fraudulent representations by plaintiff. During pendency of the action defendants surrendered possession to a court-appointed receiver. The trial court sustained plaintiff's claim of title, rejected defendants' allegations of fraud, found that defendants' payments had exceeded plaintiff's losses and awarded defendants restitution of $26,219.53. The court then granted plaintiff a limited new trial on the damage issue on the ground that, in computing the restitution awarded defendants, the court had failed to credit plaintiff with rental value from the period covering defendants' possession under the contract.

Defendants appeal from the judgment and from the new trial order. Plaintiff pursues a cross-appeal on the damage issue.

■ In ordering a new trial on the single issue of rental value, the trial court entered an order purportedly vacating the entire judgment, including those portions quieting plaintiff's title and placing plaintiff in possession. Because defendants could not appeal from a nonexistent judgment, they properly noticed their appeal to include an appeal from the order vacating the judgment. The issues of title and damage were separate. The court had power to and did grant a new trial limited to reexamination of the damage issue. (Code Civ. Proc., § 667.) That action did not affect the court's completed adjudication of unaffected issues. (*Duff* v. *Duff*, 101 Cal. 1, 4 [35

P. 437]; *Karallis* v. *Shenas,* 97 Cal.App.2d 280, 283 [217 P.2d 436].) In vacating those phases of the judgment establishing plaintiff's title and possession, the court erred and its order is to that extent reversed.

We shall affirm the judgment restoring the property to the vendor; sustain the order for a new trial on the issue of damages, but remove its limitation in order to permit full reexamination and recalculation of the vendor's claim for damages and the vendees' claim for restitution.

### The Agreement Was Not Fraudulently Induced.

In rejecting defendants' claims of constructive and actual fraud, the trial court found that there was no evidence of a confidential or fiduciary relationship between the parties and no evidence of fraudulent representation or concealment by plaintiff. Defendants attack these findings as unsupported by substantial evidence. Existence of a confidential or fiduciary relationship depends on the circumstances of each case and is a question of fact for the fact trier. (*Pryor* v. *Bistline,* 215 Cal.App.2d 437, 446 [30 Cal.Rptr. 376]; *Bleakley* v. *Carnes,* 209 Cal.App.2d 577, 587-588 [26 Cal.Rptr. 115].) A confidential relationship exists when one party gains the confidence of the other and purports to act or advise with the other's interests in mind; it may exist although there is no fiduciary relationship; it is particularly likely to exist when there is a family relationship or one of friendship. (*Vai* v. *Bank of America,* 56 Cal.2d 329, 337 [15 Cal.Rptr. 71, 364 P.2d 247].) While kinship or friendship are elements, they do not necessarily create a confidential relationship. (*Estate of Jamison,* 41 Cal.2d 1, 10 [256 P.2d 984]; *Wilson* v. *Sampson,* 91 Cal. App.2d 453, 459 [205 P.2d 753].)

In assailing the evidentiary support for findings, an appellant must state fully the evidence claimed to be insufficient; he may not select the evidence favoring himself and ignore the evidence favoring the findings of the trial court. (*Grand* v. *Griesinger,* 160 Cal.App.2d 397, 403 [325 P.2d 475].) Defendants have not fulfilled this burden. The evidence shows association of kinship and friendship extending back to the parties' common origin in Lithuania. These connections existed through the defendant Elena Balkus. Her husband, Antanas Balkus, was in no way related to plaintiff and had no associations with plaintiff prior to the time when the two families established communications, some years after their respective arrivals in this country. There was much evidence to the effect that in buying the motel defendants relied primarily on their own judgment rather than on Mrs. Kudokas; that Mrs. Kudokas made no attempt to conceal the operating finances of the motel, but on the contrary made all her financial records available to defendants; that she invited them to stay with her at the motel for the purpose of familiarizing themselves with it

and to assist them in their decision; that she did not assume the role of defendants' adviser; to the contrary, that she asked them to make their own decision; that she put them in touch with a real estate broker in case they wanted to invest in an apartment house rather than the motel. Defendants, the court found, were naive and inexperienced. Nevertheless, they were not in a state of intellectual or emotional dependency on plaintiff. The trial court was fully justified in viewing the sale as an arm's-length transaction between the seller and self-reliant buyers. The court's rejection of a confidential relationship was reasonably and fairly supported by the evidence.

■ Defendants point to two representations as evidence of actual fraud. First, Mrs. Kudokas stated in writing that she had paid $200,000 for the motel. In fact, she had paid $195,000, including a $10,000 commission. Mrs. Kudokas explained that after paying taxes and closing costs and after putting in improvements she considered that $200,000 or $210,000 was the actual price she paid for the motel. Moreover, several valuation witnesses testified that in 1965 the motel had a fair market value between $190,000 and $210,000. The court found that in 1965 it had a market value of $185,000, which was the price defendants contracted to pay.

■ The second statement occurred in a letter in which Mrs. Kudokas implied that the gross income of the motel exceeded $40,000. In actual fact, the annual gross income did exceed $40,000, except for the year 1960, when Mrs. Kudokas first purchased the motel. Although defendants make much of an implication that some rooms were rented twice in one night (thus supplying untaxed income), this emphasis is an obvious afterthought and puts defendants in the position of seeking to profit from an illegal transaction. The evidence establishes without conflict that Mrs. Kudokas made the motel's financial records available to defendants before they signed the contract. There was no justifiable reliance on expectations of hidden income.

■ The court found in general terms that there was no evidence of false representations or concealment of material facts. This finding was directed to the ultimate facts. Contrary to defendant's contention, the trial court was not required to make specific findings of the evidentiary facts underlying them. (*Price* v. *Price*, 217 Cal.App.2d 1, 9 [31 Cal.Rptr. 350].)

### Benefit-of-Bargain and Consequential Damages
### Suffered by Plaintiff-Vendor.

We turn to the major problem of the case, the question of damages. Defendants had taken possession of the motel on November 1, 1965. On September 13, 1967, after defendants defaulted in their payments, plaintiff

declared the contract terminated. Defendants refused to surrender possession until October 24, 1969, when a receiver took over the property. The trial court found that at the inception of the contract the motel and its equipment had a fair market value of $185,000 (which was the price defendants agreed to pay); that on September 13, 1967, the fair market value was $165,000; that the rental value from the latter date until defendant's surrender of possession, October 24, 1969, was $38,000 (i.e., at the rate of $1,500 per month). The court computed plaintiff's damages as follows:

| | |
|---|---:|
| Loss of bargain damages . . . . . . . . . | $ 20,000.00 |
| Delinquent taxes . . . . . . . . . . . | 10,507.76 |
| Amount due on assessment bond . . . . . . | 378.71 |
| Rental value 9/13/67 to 10/24/69 . . . . . | 38,000.00 |
| Attorney fee . . . . . . . . . . . . | 3,500.00 |
| Total . . . . . . | $ 72,386.47 |

The court found that defendants were entitled to credit for the following payments:

| | |
|---|---:|
| Down payment . . . . . . . . . . . | $45,000.00 |
| Instalments paid to vendor . . . . . . . | 5,600.00 |
| Paid on first trust deed and note . . . . . | 29,946.00 |
| Paid on second trust deed and note . . . . . | 18,060.00 |
| Total . . . . . . | $ 98,606.00 |

The court then awarded defendants $26,219.53, the difference between defendants' aggregate payments and plaintiff's damage.

Plaintiff urges her entitlement to credit for the rental value of the premises during the approximately two years that defendants held possession under the contract; charges additional damage caused by physical deterioration of the motel while defendants held over after default. In granting a new trial, the trial court accepted plaintiff's claim to credit for rental value during the period defendants were in possession under the contract, that is, from November 1, 1965, until September 13, 1967. The court granted a new trial limited to the sole issue of establishment of that rental value.

■ We uphold defendant's contention that the court erred when it granted a new trial for the purpose of establishing rental value during the time the contract was in force. That rental value was an impermissible element of damage. A defaulting vendee of real property is entitled to restitution measured by the excess of his payments over the damages caused by his breach. (*Freedman* v. *The Rector,* 37 Cal.2d 16, 22-23 [230 P.2d

629, 31 A.L.R.2d 1]; *Behrendt* v. *Abraham,* 64 Cal.2d 182, 187 [49 Cal.Rptr. 292, 410 P.2d 828].) When the vendor elects to hold the defaulting vendee responsible for damage and sues to quiet title to the property, the measure of the vendor's damage is the benefit of his bargain. (*Honey* v. *Henry's Franchise Leasing Corp.,* 64 Cal.2d 801, 803 [52 Cal.Rptr. 18, 415 P.2d 833]; *Gantner* v. *Johnson,* 274 Cal.App.2d 869 874 [79 Cal.Rptr. 381].) ▮ The calculation of benefit is governed by Civil Code section 3307.[1] In effect, that section fixes the vendor's damage at the excess of the contract price over the fair market value of the property at the date of the breach. (*Royer* v. *Carter,* 37 Cal.2d 544, 548-550 [233 P.2d 539].) As to the period of the vendee's occupancy under the contract, selection of the rental value yardstick is error. Thus, in the *Honey* case (64 Cal.2d at p. 803) the court states: "We agree with defendant's [vendor's] contention that the trial court erred in measuring its damages under this rule by the rental value of the property while plaintiff [vendee] was in possession instead of by the loss of the benefit of defendant's bargain."

▮ In seeking to justify the limited new trial order, plaintiff makes a number of unacceptable arguments. She compares herself to a rescinding vendor, who is entitled to recover the property's use value during the entire period of the vendee's possession. Plaintiff does not occupy that position. When the vendee breaches the contract, the vendor has an election to rescind or enforce the contract. Rescission would require plaintiff to restore or offer to restore all the money and credits she has received under the contract. She has not done so. (See *Gantner* v. *Johnson, supra,* 274 Cal. App.2d at p. 875.) In this action she sought forfeiture of the vendee's rights, a quiet title decree and retention of the vendee's payments. Such an action is one to enforce rather than rescind the contract. (*Honey* v. *Henry's Franchise Leasing Corp., supra,* 64 Cal.2d at pp. 803-805.)

Plaintiff cites a number of cases holding or implying that loss of the property's rental value during the vendee's occupancy under the contract is a proper element of the nonrescinding vendor's damages. Chief among them is *Behrendt* v. *Abraham, supra,* decided in February 1966. In July 1966 the state Supreme Court's decision in *Honey* v. *Henry's Franchise Leasing Corp., supra,* distinctly and firmly selected "benefit of the bargain" as the rule of damage required by Civil Code section 3307. The *Behrendt* decision had cited and relied upon *Bird* v. *Kenworthy,* 43 Cal.2d 656,

---

[1]Civil Code section 3307 provides: "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him."

659-660 [277 P.2d 1], a case involving personal property. By its own terms (see fn. 1, *ante*) section 3307 does not cover breach of contract actions involving the sale of personal property. *Behrendt* did not consider section 3307 and the benefit-of-bargain rule. Whatever the precedential status of *Behrendt,* we find the governing rule in the *Honey* case and in *Royer* v. *Carter, supra.* To the extent that a choice is necessary between these two lines of authority, we follow *Honey* and *Royer,* conforming at that point to the pattern pursued in *Gantner* v. *Johnson, supra,* 274 Cal. App.2d at page 875.

Contrary to plaintiff's contention, the benefit-of-bargain rule does not give defendants free occupancy during the two years they had possession under the contract. At this point plaintiff overlooks the fact that during these two years defendants took the risk—and relieved plaintiff of the risk —of a decline in capital value. In selecting a remedy for breach of the contract, the vendor has a choice between rescission and enforcement. Conceivably, rescission and restoration of the vendee's payments would put the vendor in a position to recover use value. Here the vendor chose not to rescind. Here the vendor seeks to quiet title "on condition that he refund the excess, if any, of the payments received over the amount necessary to give him the benefit of his bargain." (*Honey* v. *Henry's Franchise Leasing Corp., supra,* 64 Cal.2d at p. 805.) This lawsuit manifests an election to treat the property as though it had been sold, not rented. In arguing for rental value in addition or as an alternative to "benefit of the bargain," plaintiff would treat the property as though it had not been sold. The trial court erred in ordering a new trial on the theory that the plaintiff-vendor was entitled to rental value during the period of the defendant-vendees' possession under the contract.

In addition to damages measured by the loss of his bargain, the vendor is entitled to additional out-of-pocket expenses or consequential damages caused by the breach. (*Royer* v. *Carter, supra,* 37 Cal.2d at p. 550; *Abrams* v. *Motter,* 3 Cal.App.3d 828, 849 [83 Cal.Rptr. 855].) The rule designating the date of the breach as the measuring point of value presupposes that the vendor is free to use or dispose of the property on that date; accordingly, if the vendee wrongfully retains possession—as defendants did here—the vendor should have additional damages caused by the wrongful retention in the amount necessary to give him the benefit of his bargain. The rental value of the premises is an appropriate measure of the additional damages attributable to the vendor's loss of use during the vendee's wrongful retention. (*Luz* v. *Lopes,* 55 Cal.2d 54, 61 [10 Cal. Rptr. 161, 358 P.2d 289]; see also *McKinley* v. *Lagae,* 207 Cal.App.2d 284, 295 [24 Cal.Rptr. 454].) The trial court properly awarded plaintiff

consequential damage of the reasonable rental of $1,500 per month from September 1967, when defendants wrongfully refused to surrender the motel, until October 1969, when the receiver took over.

██ As defendants point out, plaintiff did not specifically pray for damages based upon rental value. The absence of that prayer is not fatal, since the court was charged with granting any relief embraced within the issues. (*Petersen* v. *Ridenour,* 135 Cal.App.2d 720, 727 [287 P.2d 848].)

The trial court did not credit plaintiff with a number of items of consequential damage claimed as "the natural consequence" of the breach. (*Royer* v. *Carter, supra,* 37 Cal.2d at p. 550.) ██ A repossessing vendor should recover the expense of resale of the property over and above the selling expense he assumed under the breached contract.[2] (*Caplan* v. *Schroeder,* 56 Cal.2d 515, 521 [15 Cal.Rptr. 145, 364 P.2d 321]; *Jensen* v. *Dalton,* 9 Cal.App.3d 654, 657 [88 Cal.Rptr. 426].) ██ In addition to selling expenses, plaintiff points out that she paid real estate taxes incurred during the period of defendants' occupancy; interest on special assessment bonds accruing during the same period, and a penalty or fee required to rescue a trust deed from default occasioned by the defendants' failure to make current payments. Moreover, the defendant-vendees' unjustified refusal to restore the property forced the plaintiff-vendor into the expense of a receivership to maintain the property's productivity. The trial court should recalculate and give plaintiff credit for any such items of damage as were the natural consequences of the breach, taking such evidence as may be necessary and applying the criteria described in such cases as *Abrams* v. *Motter, supra,* 3 Cal.App.3d at pages 848-851, and *Allen* v. *Enomoto,* 228 Cal.App.2d 798, 803-805 [39 Cal.Rptr. 815].

Plaintiff charges the trial court with error in refusing to grant a new trial to permit tardily discovered evidence of physical damage to the premises caused by defendants' alleged mismanagement. We discern no abuse of discretion at that point. Nevertheless, plaintiff should not be precluded from raising the claim upon retrial. At the first trial, both sides invited error by making legally inappropriate damage and restitution claims. Retrial of these claims should be wide open, unrestricted by misconceptions antedating the appeal. We indulge in no attempt to anticipate the trial court's findings on the score of alleged physical damage.

---

[2]Pending appeal, defendants sought a supersedeas to prevent the receiver from reselling the motel to a buyer found by plaintiff. We denied the supersedeas. Inferably, on retrial the court will have the advantage of evidence of actual rather than figurative resale expenses. (See *Barton* v. *White Oak Realty, Inc.,* 271 Cal. App.2d 579, 584-586 [76 Cal.Rptr. 587].)

### Inclusion of Interest as Part of Restitution
### Awarded the Vendees.

At the inception of the contract defendants made a $45,000 down payment to plaintiff and assumed two promissory notes secured by trust deeds. During their occupancy defendants made payments of principal and interest to plaintiff and to the holders of the first and second trust deeds. In fixing $98,606 as the gross restitution awarded defendant, the trial court included both principal and interest. Plaintiff argues for exclusion of all the vendees' interest payments. We sustain that contention in part.

Aside from the $45,000 down payment, the record does not permit an accurate segregation between the vendees' payments of principal and of interest. Plaintiff asserts that the interest payments amounted to $20,850.37 and seeks reduction of the restitution award by that amount. The coming retrial of the monetary aspects obviates the need for precise ascertainment on appeal.

It will be remembered that defendant-vendees were in possession of the property for approximately two years under the contract, then wrongfully retained possession for about two more years after the plaintiff-vendor declared their default. During the first two years defendants made substantial payments of principal and interest to plaintiff and to the trust deed holders. During the second two years defendants made substantial payments of principal and interest to the trust deed holders. We thus have two questions: (1) Should a vendee's restitution include his interest payments which accrued while the contract was in force? (2) Should a vendee's restitution include his interest payments which accrued after default and during his wrongful holding over?

When the vendor sues the defaulting vendee to quiet title and to recover the benefit of his bargain, he does not seek to restore the parties to their precontractual position; rather, he affirms the contract's existence from its inception until the declaration of default. (*Honey* v. *Henry's Franchise Leasing Corp., supra,* 64 Cal.2d at pp. 803-804; *Gantner* v. *Johnson, supra,* 274 Cal.App.2d at p. 875.) During the contract's existence, the vendee is equitable owner of the land; the vendor's security title provides him no greater rights than a seller who has given a deed and taken back a mortgage. (*Elliott* v. *McCombs,* 17 Cal.2d 23, 31 [109 P.2d 329]; see also *Abrams* v. *Motter, supra,* 3 Cal.App.3d at p. 847.) Indeed, the mortgagee-mortgagor analogy is most apt, because California law attempts to treat installment land sales as security devices substantially on a par with mortgages and deeds of trust. (*MacFadden* v. *Walker,* 5 Cal.3d 809, 816 [97 Cal.Rptr. 537, 488 P.2d 1353].) Upon foreclosure of a mortgage,

who would grant the mortgagor a refund of interest he paid the first and second mortgagees?

As we noted earlier, the dispossessed vendee is entitled to restitution, measured by the excess of his payments over the damages caused by his breach. The objective of the restitution doctrine is avoidance of forfeiture and unjust enrichment. (*Freedman* v. *The Rector, supra,* 37 Cal.2d at pp. 20-22.) Loss of the interest payments accruing during the contract's life imposes no forfeiture on the vendee; neither does it unjustly enrich the vendor. Interest paid the vendor is no more than his just due for the vendee's use of deferred principal. Interest paid a third party lienholder is only part of the vendee's burden of ownership; it pays for the vendee's, not the vendor's, use of the lienholder's money. █ It follows that the vendee's restitution should exclude his outlays for interest which accrued during his equitable ownership of the property.

Arguably, *Behrendt* v. *Abraham, supra,* is authority to the contrary. There the court distinctly allowed the defaulting vendee "credit for all payments made, including those attributable to interest." (64 Cal.2d at p. 186.) In that case, as we observed earlier, the court did not award the vendor damages measured by the benefit of his bargain; rather, it awarded him the property's rental value during the vendee's occupancy. As the court acknowledged, it was treating the transaction "as if the property had not been sold but had been rented." (64 Cal.2d at p. 188.) Such an approach is more appropriate to a rescission, which "in effect converts a debt secured by the property into a lease of the property, a result not contemplated by either of the parties." (*Honey* v. *Henry's Franchise Leasing Corp., supra,* 64 Cal.2d at p. 804.) That approach is not appropriate to the affirmation of equitable ownership implicit in the seller's suit to quiet title and recover the benefit of his bargain. Whatever its consistency with the mainstream of California law, *Behrendt* v. *Abraham* possessed internal consistency in awarding rent to the vendor and restoring interest paid by the vendee. Here, in conformity with decisions such as *Honey* and *Royer,* we treat the transaction as a temporary sale and deny the vendor recovery of rental value during the vendee's temporary ownership. Conceptual obedience to *Honey* and *Royer* requires rejection of the defendant-vendees' claim to interest payments accruing during their temporary ownership.

█ Restitution of interest payments accruing after the vendor's declaration of default is another matter. At that stage the vendees had lost their equitable ownership. The vendor has merged legal and equitable ownership in herself and wiped out the vendees' assumption of the outstanding notes and trust deeds. In a sense, the vendees were volunteers when they

made payments to the trust deed holders. More accurately, they had a mistaken view of their rights and were vainly attempting to strengthen their hold on the property. At any rate, there is no claim or evidence of bad faith in the vendees' continuation of payments to the trust deed holders. While making these payments, the vendees were holdover occupants of the property, incurring liability to the vendor for reasonable rent. To require them to pay rent to the vendor plus interest on the latter's debts would be unfair. Conceptual consistency demands that when the vendees pay rental value for their occupancy, their interest payments should be restored to them. (*Behrendt* v. *Abraham, supra.*)

On retrial, therefore, the trial court's findings should make a segregation between defendants' payments of principal and of interest and a further segregation between interest payments which accrued before and after the declaration of default in September 1967. Interest payments accruing before the default should be excluded from the vendees' restitution; those accruing after the default should be included.

### Judgment on Appeal.

We reverse the order vacating those parts of the judgment establishing plaintiff's title and possession; those particular parts of the judgment are affirmed. We modify the order granting a new trial by removing its limitation in order to permit full inquiry and recalculation of the vendor's claim for damages and the vendees' claim for restitution of payments. As so modified, the order granting a new trial on the damage issue is affirmed. Each side will bear its own appeal costs.

Regan, J., and White, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.