ORDER DENYING DEFENDANT GIGMANIA LTD.’S MOTION TO DISMISS COMPLAINT
 

 COYLE, District Judge.
 

 On September 18, 2000 the court heard Defendant Gigmania Ltd.’s (“Gigmania”) motion to dismiss the Complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. In connection with its Rule 12(b)(6) motion, Gigmania requested judicial notice of the following documents: 1) a printout of Pollstar’s Internet web site as it existed on- July 9, 2000; 2) a copy of the First Amended Complaint filed in
 
 Ticketmaster Corp. v. Tickets.com, Inc.;
 
 3) a copy of Notice of Defendant Tickets.com’s Motion to Dismiss Plaintiffs Amended Complaint and Motion to Dismiss filed in
 
 Ticketmaster;
 
 4)a copy of the Memorandum of Points and Authority in Support of Defendant Tickets.com’s Motion to Dismiss Plaintiffs Amended Complaint filed in
 
 Ticketmaster;
 
 5) a copy of Plaintiffs’ Opposition to Motion to Dismiss Plaintiffs’ Amended Complaint filed in
 
 Ticketmaster;
 
 6) a copy of the Reply Brief in Support of Tickets.com’s Motion to Dismiss filed in
 
 Ticketmaster;
 
 7) a copy of the Copyright Office Circular 66, “Copyright of Registration for Online Works.”
 

 Upon due consideration of the written and oral arguments of the parties and the record herein, the court denies Gigmania’s motion to dismiss for the reasons set forth herein.
 

 I.
 
 Pollstar’s Allegations
 

 The complaint alleges three claims against Gigmania. The first claim is for common law misappropriation. The second claim is for unfair competition under Cal. Bus.
 
 &
 
 Prof.Code § 17200. The last claim is for breach of contract of the license agreement.
 

 Pollstar alleges that it created and developed up-to-the-day time sensitive concert information that was published daily on its web site — www.pollstar.com—at great time and expense to itself. Complaint, ¶ 5. By accessing the pollstar.com web site, an Internet user can download and use the timely and up-to-date concert information pursuant to conditions of a license agreement. Complaint, ¶ 8.
 
 [1]
 
 Pollstar alleges that Gigmania downloaded pollstar.com from the Internet and placed information that is copied from the polls-tar.com web site on its web site at
 
 www. gigmania. com.
 

 
 *977
 
 For the common law misappropriation claim, Pollstar alleges the following: 1) it collects and generates information regarding the concert industry — the value of which is found in the accuracy and the time sensitive nature of some of the information; 2) the defendant uses plaintiffs information and sells the information for commercial purposes in direct competition with Plaintiff; 3) the defendant free-rides on Plaintiffs costly efforts which if allowed to continue will reduce Pollstar’s incentive to collect and publish the information; 4) the defendant has intentionally and knowingly misappropriated Plaintiffs information; 5) Plaintiff has been irreparably damaged by Defendant’s use of Plaintiffs information.
 
 Id.
 
 at ¶ 17-22.
 

 For the state claim of unfair competition under Cal. Bus. & Prof.Code § 17200, Pollstar alleges that defendant has been appropriating Plaintiffs property and has therefore been engaging in unfair trade practices and unfair competition against Plaintiff to its irreparable harm.
 
 Id.
 
 at ¶ 23-24.
 

 Finally, Pollstar alleges a breach of contract claim. It alleges that any user of its pollstar.com web site is immediately confronted with a notice that use of the web site is subject to a license agreement, which is set forth on the web site.
 
 Id.
 
 at ¶ 26. Pollstar states that by clicking on the access button to retrieve any of the information contained in the web site, Defendant agreed to be bound by the terms of the License Agreement.
 
 Id.
 
 at ¶ 27. Pollstar further alleges that since March 9, 2000 and before, Defendant has downloaded concert information from Plaintiffs web site and used the information for commercial purposes in breach of the contract.
 
 Id.
 
 at ¶ 28. Finally, Plaintiff alleges that it has been harmed by Defendant’s use of its information because it has lost sales of the information to commercial purchasers.
 
 Id.
 
 at ¶ 29.
 

 II.
 
 Motion to Dismiss under Fed. R.Civ.P. 12(b)(6)
 

 A Standard
 

 Under Rule 12(b)(6), “dismissal for failure to state a claim is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.”
 
 Cervantes v. City of San Diego,
 
 5 F.3d 1273, 1274 (9th Cir.1993) (citations omitted). Rule 12(b)(6) should be read in conjunction with Rule 8(a) which requires “a short and plain statement of the claim showing that the pleader is entitled to relief.” 5A Charles A. Wright
 
 &
 
 Arthur R. Miller,
 
 Federal Practice and Procedure
 
 1355-56 (1990). Moreover, a court “must accept all material allegations in the complaint as true, and construe them in the light most favorable to the plaintiff.”
 
 NL Industries v. Kaplan,
 
 792 F.2d 896 (9th Cir.1986).
 

 In addition, unless a Rule 12(b)(6) motion is converted to a motion for summary judgement, “evidence outside the pleadings cannot normally be considered in deciding a 12(b)(6) motion.”
 
 Farr v. United States,
 
 990 F.2d 451, 454 (9th Cir.1993). However, a court may consider material submitted as part of the complaint and take judicial notice of facts outside the pleadings.
 
 Hal Roach Studios v. Richard Feiner & Co.,
 
 896 F.2d 1542, 1554 n. 19 (9th Cir.1990);
 
 Mack v. South Bay Beer Distribs., Inc.
 
 798 F.2d 1279, 1282 (9th Cir.1986),
 
 abrogated on other grounds,
 
 Astoria
 
 Federal Sav. and Loans Ass’n v. Solimino,
 
 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). Furthermore, “documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to
 
 *978
 
 dismiss.”
 
 Branch v. Tunnell,
 
 14 F.3d 449, 454 (9th Cir.),
 
 cert. denied,
 
 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994).
 

 In
 
 Branch,
 
 the plaintiff brought a
 
 Bivens
 
 action against the government agent who executed a search warrant.
 
 Id.
 
 at 450. The plaintiff referred to two documents — a deposition transcript and an affidavit — in his amended complaint but did not attach the documents as part of the complaint.
 
 Id.
 
 at 453. The district court treated the documents as part of the pleadings for purposes of deciding the defendant’s motion to dismiss.
 
 Id.
 
 The Ninth Circuit held that the district court did not err in considering either documents.
 
 Id.
 
 at 454. The court stated that “[sjuch consideration does not ‘convert the motion to dismiss into a motion for summary judgment.’ ”
 
 Id.
 
 (quoting
 
 Romani v. Shearson Lehman Hutton,
 
 929 F.2d 875, 879 (1st Cir.1991)).
 

 B. Judicial Notice
 

 In conjunction with its Rule 12(b)(6) motion, the defendant requested judicial notice of a printout of the pollstar.com web site, a copy of Copyright Office Circular 66 as well as various pleadings filed in
 
 Ticketmaster Corp. v. Tickets.com, Inc.,
 
 United States District Court for the Central District of California, Case No. 99-07654 HLH (BQRx).
 

 Under Federal Rule Evidence 201(d), the court shall take judicial notice of adjudicative facts if requested by a party and supplied with the necessary information. “A judicially noticed fact must be one not subject to reasonable dispute in that it is either (l)generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” Fed. R.Evid. 201(b).
 

 In the present case, some of the contents of the pollstar.com web site tvere alleged in the complaint. In particular, the license agreement and its notice is mentioned in the Complaint. Moreover, neither party disputes the web site’s authenticity. Therefore, the court can and does consider the pollstar.com web site in determining Gigmania’s Rule 12(b)(6) motion.
 
 [2]
 
 The court need not consider whether a printout of a web site as that site existed on July 9, 2000 is “generally known” and “capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.”
 

 In addition, Gigmania is seeking to have pleadings from an unrelated district court case judicially noticed. Gigmania is asking the court to take judicial notice of documents that are quite different from documents held to be proper subjects for judicial notice by the Ninth Circuit. In
 
 Mack,
 
 the Ninth Circuit ruled that the district court could take judicial notice of the California Unemployment Insurance Appeals Board’s decision.
 
 Mack,
 
 798 F.2d 1279 at 1282. In
 
 Assembly of State of California,
 
 the district court judicially noticed two orders relating to the defendant and records from the Bureau of Census and the House Subcommittee on Census and Population.
 
 Assembly of State of Cal.
 
 
 *979
 

 v. Dep’t of Commerce,
 
 797 F.Supp. 1554, 1559 (E.D.Cal.),
 
 aff'd,
 
 968 F.2d 916 (9th Cir.1992). In
 
 M/V American Queen,
 
 the Ninth Circuit held that the district court could look to unpublished orders to help it identify general policy considerations.
 
 M/V American Queen v. San Diego Marine Constr.,
 
 708 F.2d 1483, 1491 (9th Cir.1983). These cases do not consider whether pleadings from an unpublished district court case can be judicially noticed. Because there is no authority for judicial notice of pleadings in an unrelated case, the court declines to take judicial notice of the
 
 Ticketmaster
 
 pleadings.
 

 With respect to the Copyright Office Circular 66, the court takes judicial notice of the circular. Circular 66 informs the public that it can apply for copyright registration of online works made available over a communications network such as the Internet. The Copyright Office Circular 66 is “generally known” and “capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned” because it is contained in the United States Copyright Office.
 

 C. Common Law Misappropriation Claim
 

 Gigmania argues that Pollstar’s common law misappropriation claim is preempted by the Copyright Act. In determining preemption, the Ninth Circuit has stated:
 

 A state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a plaintiff asserts under state law must be ‘rights that are equivalent’ to those protected by the Copyright Act. Second, the work involved must fall within the ‘subject matter’ of the Copyright Act set forth in 17 U.S.C. §§ 02 and 103.”
 

 Kodadek v. MTV Networks,
 
 152 F.3d 1209, 1212 (9th Cir.1998) (citations omitted).
 

 Defendant concedes that Pollstar has “re-costume[d] its preempted ‘you-copied-our facts’ cause of action as a ‘hot news’ misappropriation claim,” which is not preempted by the Copyright Act.
 
 See National Basketball Ass’n v. Motorola, Inc.,
 
 105 F.3d 841, 845 (2d Cir. 1997)(“NBA”)(“Based on the legislative history of the 1976 amendments, it is generally agreed that a ‘hot news’ INS-like claim survives preemption.”). However, Gigmania argues that the kinds of facts allegedly copied are not “hot news.”
 

 A “hot news” claim was recognized by the Supreme Court in
 
 International News Service v. Associated Press,
 
 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918) (“INS”). In
 
 INS,
 
 the defendant was a competing news service that copied facts from the bulletin boards and early editions of East Coast AP newspapers and wired the facts to its customers.
 
 Id.
 
 at 231, 39 S.Ct. 68. The Court held that INS’ conduct was a common law misappropriation of AP’s property.
 
 Id.
 
 at 247, 39 S.Ct. 68.
 

 More recently, the Second Circuit described the elements of a “hot news” claim in
 
 NBA
 
 According to the court, the elements central to an INS claim are:
 

 (i) the plaintiff generates or collects information at some cost or expense; (ii) the value of the information is highly time-sensitive; (iii) the defendant’s use of information constitutes free-riding on the plaintiffs costly efforts to generate or collect it; (iv) the defendant’s use of the information is in direct competition with a product or service offered by the plaintiff; (v) the ability of the other party to free-ride on the efforts of the plaintiff would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.
 

 NBA
 
 105 F.3d at 852.
 

 Defendant acknowledges that Pollstar has pled sufficiently that it has collected
 
 *980
 
 information at some cost and that Gigma-nia is a direct competitor. However, Gig-mania contends that concert information is not highly time sensitive hot news as a matter of law. Furthermore, Gigmania argues that Pollstar has failed to effectively allege facts showing Gigmania is a free-rider whose activities threaten the existence of Pollstar’s services.
 

 Although the defendant is correct is stating that there is no case that has held that information of the kind at issue is protectable as “hot news,” the court declines to decide this issue at the present time. With respect to Pollstar’s allegation that Gigmania is free-rider and that the free-riding threatened the existence of Pollstar’s services, the Complaint pled sufficient facts to support that allegation. The Complaint alleges that Gigmania copied false concert information from the pollstar.com web site. The Complaint also asserts that Pollstar profits from its activities. Therefore, the Court concludes that Pollstar’s common law misappropriation claim was pled with sufficiency as a “hot news” claim.
 

 D. Unfair Competition Claim
 

 The defendant argues that Pollstar’s unfair competition claim is also preempted by the Copyright Act. In determining preemption, the Ninth Circuit stated:
 

 A state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a
 

 plaintiff asserts under state law must be ‘rights that are equivalent’ to those protected by the Copyright Act. Second, the work involved must fall within the ‘subject matter’ of the Copyright Act set forth in 17 U.S.C. §§ 102 and 103.”
 

 Kodadek v. MTV Networks,
 
 152 F.3d at 1212. “An unfair competition action for misappropriation of time and effort is cognizable if the claim contains an extra element which changes its nature.”
 
 Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc., 7
 
 F.3d 1434, 1441 (9th Cir.1993).
 

 In the present case, Pollstar’s unfair competition claim alleges that Defendant has appropriated its property by publishing and selling it on the Internet. Because Pollstar has pled a “hot news” misappropriation claim, that claim provides the unfair competition claim with an extra element. Thus, Pollstar’s unfair competition claim based on a “hot news” misappropriation claim survives Gigmania’s motion to dismiss.
 
 [3]
 

 E. Breach of Contract Claim
 

 Gigmania contends that the breach of contract claim fails as a matter of law because Pollstar cannot allege the required contract element of mutual consent. Viewing the web site, the court agrees with the defendant that many visitors to the site may not be aware of the license agreement. Notice of the license agreement is
 
 *981
 
 provided by small gray text on a gray background.
 

 Moreover, unlike the shrinkwrap license held enforceable in
 
 ProCD v. Zeidenberg,
 
 86 F.3d 1447 (7th Cir.1996), the license agreement at issue is a browse wrap license. A shrinkwrap license appears on the screen when the CD or diskette is inserted and does not let the consumer proceed without indicating acceptance. By contrast, a browse wrap license is part of the web site and the user assents to the contract when the user visits the web site. No reported cases have ruled on the enforceability of a browse wrap license. However, the Seventh Circuit’s opinion in
 
 ProCD
 
 provides some policy considerations that are helpful to the court.
 

 In
 
 ProCD,
 
 the plaintiff was the seller of a software database that contained a compilation from 3,000 telephone directories.
 
 ProCD,
 
 86 F.3d at 1449. The plaintiff engaged in price discrimination, selling the software at a different price to the general public than it sold to commercial users.
 
 Id.
 
 at 1449. To make the price discrimination effective, the plaintiff enclosed a license agreement restricting “consumer-users” of the ProCD product to noncommercial use of the product.
 
 Id.
 
 at 1450. The license agreement was encoded on the CR-ROM disks and was also printed in the manual.
 
 Id.
 
 The license appeared on the user’s screen every time the software was in operation.
 
 Id.
 

 When the defendant, the owner of an Internet service, purchased the noncommercial copy of the ProCD software and resold the database information on the Internet, the plaintiff sued for breach of contract among other claims.
 
 Id.
 
 The Seventh Circuit, reversed the district court’s dismissal of ProCD’s claim, finding that the “shrinkwrap” software license agreement was valid and not preempted by the Copyright Act.
 
 Id.
 
 at 1454.
 
 Accord In re Marriage of Worth,
 
 195 Cal.App.3d 768, 778, 241 Cal.Rptr. 135 (1987)(“State laws granting or protecting other rights (such as breach of contract, conversion, defamation, etc.) have not been preempted.”).
 

 In reaching its conclusion, the
 
 ProCD
 
 court considered transactions where the consumer purchases prior to getting the detailed terms of the contract.
 
 Id.
 
 at 1450. The court noted that an insurance buyer remits the premium prior to getting the policy.
 
 Id.
 
 Likewise, a traveler pays for airplane ticket before she receives it and is bound by the terms of the ticket.
 
 Id.
 
 The court pointed out that “to use the ticket is to accept the terms, even terms that in retrospect are disadvantageous.”
 
 Id.
 
 Similarly, the concert goer purchases a ticket that states that the patron agrees not to record the concert; to attend is to agree.
 
 Id.
 
 Although it could be arranged so that every patron must sign this promise before purchasing the ticket, it would raise the prices, lengthen the ticket lines and prevent purchase of tickets by phone or Internet.
 
 Id.
 

 In the present case, Pollstar alleges that users of the concert information are bound by the license agreement. This license agreement is not set forth on the homepage but is on a different web page that is linked to the homepage. However, the visitor is alerted to the fact that “use is subject to license agreement” because of the notice in small gray print on gray background. Since the text is not underlined, a common Internet practice to show an active link, many users presumably are not aware that the license agreement is linked to the homepage. In addition, the homepage also has small blue text which when clicked on, does not link to another page. This may confuse visitors who may then think that all colored small text, regardless of color, do not link the homepage to a different web page.
 

 
 *982
 
 While the court agrees with Gigmania that the user is not immediately confronted with the notice of the license agreement, this does not dispose of Ponstar’s breach of contract claim. ' The court hesitates to declare the invalidity and unenforceability of the browse wrap license agreement at this time. Taking into consideration the examples provided by the Seventh Circuit — showing that people sometimes enter into a contract by using a service without first seeing the terms — the browser wrap license agreement may be arguably valid and enforceable.
 

 Finally, Gigmania argues that any contract should be rendered unenforceable under the doctrine of copyright misuse. A copyright misuse arises when the plaintiff uses its copyright to enlarge its monopoly of the copyright.
 
 Practice Management Info. Corp. v. American Medical Ass’n,
 
 121 F.3d 516, 520 (9th Cir.1997), ce
 
 rt. denied,
 
 524 U.S. 952, 118 S.Ct. 2367, 141 L.Ed.2d 736 (1998);
 
 Lasercomb America, Inc. v. Reynolds,
 
 911 F.2d 970, 976-77(4th Cir.1990). “A successful defense bars the culpable plaintiff from prevailing on an action for infringement of the misused copyright.”
 
 Lasercomb,
 
 911 F.2d at 977. However, copyright misuse does not invalidate a copyright; it only precludes its enforcement during the period of misuse.
 
 Practice Management,
 
 121 F.3d at 520.
 

 In the present case, the court need not decide whether there was copyright misuse because Plaintiff does not allege copyright infringement.
 

 ACCORDINGLY, IT IS ORDERED that Defendant Gigmania’s Motion to Dismiss be denied.
 

 [1]
 

 .The license agreement states in pertinent part:
 

 License Agreement:
 
 Any person using information from this web site hereby agrees to the following terms:
 

 1. All documents and information may only be used for informational purposes.
 

 2. All documents and information may only be used for non-commercial purposes.
 

 3. Any copy of these documents or information or portions thereof must include the copyright notice and this License Agreement.
 

 Any duplication, transmission by any method, or storage in an information retrieval system of any part of this publication for purposes other than those stated above is strictly prohibited without the specific written permission of the publisher. This includes, but is not limited to, transcription into any form of computer system for audio text, print or visual retrieval. All rights under federal copyright laws and laws applicable to this License Agreement including any legal and injunctive relief will be strictly enforced.
 

 Note that any product, process or technology described in this publication may be the subject of other intellectual property rights reserved by
 
 Pollstar
 
 and are not licensed hereunder.
 

 Complaint, ¶ 8.
 

 [2]
 

 . Pollstar is correct in stating that the printout of the pollstar.com web site provided by Gigmania to the Court did not exist at the time the Complaint was filed because the content of the web site is updated periodically by Pollstar. However, Pollstar does not refute Gigmania’s contention that the license agreement notice was in small gray text on a gray background. Since the license agreement notice is not in dispute, the Court may take judicial notice of the printout of the web site for the limited purpose of evaluating the online license agreement.
 

 [3]
 

 . In addition, Pollstar argues that its allegations set forth a claim of reverse palming off, thereby furnishing the "extra element” required to save the unfair competition claim from preemption. However, Pollstar never specifically alleged a reverse palming off claim in its Complaint. The Ninth Circuit has stated that:
 

 Express reverse palming off occurs when one party purchases or otherwise obtains a second party’s goods, removes the second party’s name, and then markets the product under its own name. A defendant may also be guilty of reverse palming off by selling or offering for sale another's product that has been modified slightly and then labeled with a different name.
 

 Summit Machine,
 
 7 F.3d at 1437. The Complaint does not allege facts regarding how the public is mislead into thinking that the defendant's product is the plaintiff's product.