Jane E. AAGARD, d/b/a Designs
by Jane, Plaintiff,

v.

PALOMAR BUILDERS, INC., Jeffrey
D. Allen, Sue Tsai, Palomar Construc-
tion Co., and Todd Selk, Defendants.

No. CIV.S–04–0825 FCDDAD.

United States District Court,
E.D. California.

Nov. 16, 2004.

Steven H. Gurnee, Steven H. Gurnee and Associates, Roseville, CA, Anthony J. Biller, Pro Hac Vice, Coats and Bennett, Cary, NC, for Plaintiff.

Daniel N. Ballard, McDonough Holland and Allen PC, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

This matter comes before the court on plaintiff and counterclaim defendant Jane E. Aagard's ("Aagard") motion to dismiss counterclaims three through seven, brought by defendants and counterclaimants Palomar Builders, Inc., Jeffrey D. Allen, Sue Tsai, Palomar Construction Co., and Todd Selk (collectively, "Palomar"), for failure to state a claim upon which relief can be granted.[1]

Aagard asserts that Palomar's counterclaims fail to state a claim for relief for misappropriation; unlawful business practices, pursuant to Cal. Bus. & Prof.Code §§ 17200 and 17500 *et seq.*; intentional interference with prospective business advantage; breach of fiduciary duty; and declaratory relief, pursuant to 28 U.S.C. §§ 2201 and 2202. Specifically, Aagard contends that these state law counterclaims are preempted, pursuant to the Supremacy Clause of the United States Constitution, by federal copyright law.

## BACKGROUND

Palomar designs and constructs residential homes in and around Redding, California. (Defs.' Answer and Counterclaim ("Defs.' Counterclaim"), filed May 26, 2004 at 7.) Early in the company's development, Palomar created several original House Design Plans ("Plans"), which were recognized nationally[2] for "unique and distinctive features." (*Id.* at 8–9.) Palomar contends that these Plans are known in the industry as "Palomar Plans." (*Id.* at 11.) In 1995, Palomar hired Aagard as an independent contractor to perform residential energy calculations. (*Id.* at 9.) At that time, the company provided Aagard with numerous original Plans, each labeled with Palomar's name and address. (*Id.*)

In 1997, Aagard began working as a draftsman for Palomar's new Plans. (*Id.* at 10.) As part of the arrangement, Aagard redrew Palomar's original Plans into a larger size suitable for submission to the City of Redding, Building Division.[3] (*Id.* at 9–10.) The resized Plans were then labeled as being created and owned by Palomar. (*Id.* at 9.) Over the years, Palomar contracted with numerous draftsmen, including Aagard, to redraw or otherwise modify approximately sixty Plans. (*Id.* at 9–10.) As with all draftsmen employed by Palomar, Aagard's duties were limited to resizing Palomar's original Plans. (*Id.* at 10.) Inherent in the parties' relationship was Aagard's obligation to refrain from claiming credit for, or ownership of, the reproductions. (*Id.*)

In 2000, without Palomar's approval, Aagard began stamping some of the Plans with a copyright notification. (*Id.* at 11.) The stamp informed prospective home builders that only Plans containing the notification were legal. (*Id.*) When Palomar inquired about the purpose of the stamp, Aagard explained that it was used for insurance purposes only. (*Id.*) Shortly thereafter, the parties' contractual relationship ended. (*Id.*) In November 2001, Palomar learned that Aagard, d/b/a Designs by Jane, was selling Palomar's Plans

---

1. Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. Local Rule 78–230(h).

2. Palomar was profiled in two leading building design journals. (Defs.' Counterclaim at 9.)

3. The Building Division requires that plans be submitted in a larger 1/4 scale size. (*Id.* at 9–10.) Since Palomar draws its original Plans in smaller 1/8 scale size, it hires draftsmen to "resize" the Plans. (*Id.*)

to local home builders as part of her Redding, California, house design business. (*Id.* at 7, 11.) Many of her customers allegedly built homes based upon these Plans. (*Id.* at 11.)

On April 23, 2004, Aagard filed the instant civil action in federal district court, Eastern District of California, claiming copyright infringement of Plans 2138, 2776, and 2496. (Pl.'s Complaint, filed Apr. 23, 2004.) Palomar subsequently filed copyright registrations for Plans 2138, 3088, 2496, 1608, and 2510 on May 25, 2004. (Declaration of Daniel N. Ballard ("Ballard Declaration"), filed May 26, 2004, at 2.) On May 26, 2004, Palomar answered and presented counterclaims, alleging, among other charges: misappropriation; unlawful business practices, pursuant to Cal. Bus. & Prof.Code §§ 17200 and 17500 *et seq.;* intentional interference with prospective business advantage; breach of fiduciary duty; and declaratory relief, pursuant to 28 U.S.C. §§ 2201 and 2202. (Defs.' Counterclaim.) On July 1, 2004, Aagard filed the instant motion to dismiss, asserting that Palomar's state law claims are preempted by federal copyright law. (Pl.'s Memorandum in Support of Motion to Dismiss Third Through Seventh Counterclaims ("Pl.'s MTD"), filed July 1, 2004.)

## STANDARD

■ On a motion to dismiss, the allegations of the counter complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Given that the counter complaint is construed favorably to the pleader, the court may not dismiss it for failure to state a claim unless it appears beyond a doubt that the counterclaimant can prove no set of facts in support of the counterclaim which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *NL Industries,*

*Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

■ The court is bound to give the counterclaimant the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the counter complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). Thus, the counterclaimant need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See id.* Nevertheless, it is inappropriate to assume that the counterclaimant "can prove facts which it has not alleged or that the [counterclaim] defendants have violated the ... laws in ways that have not been alleged." *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

■ In ruling upon a motion to dismiss, the court may consider only the counter complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. Of Mary Hospital,* 844 F.2d 646, 649 (9th Cir.1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.,* 12 F.Supp.2d 1035, 1042 (C.D.Cal. 1998).

## ANALYSIS

■ Aagard contends that Palomar's state law claims are preempted by the federal Copyright Act, 17 U.S.C. §§ 101–1101 ("Copyright Act"). "When acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms." *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1003 (9th Cir.2001). Section 301 of the Copyright Act specifically provides that state copyright legislation is preempted when two elements are present.[4] 17 U.S.C. § 301(a).

---

4. 17 U.S.C. § 301(a) states, in pertinent part,

[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within

First, the content of the protected right must fall within the subject matter of the Copyright Act as described in 17 U.S.C. §§ 102–103. *Downing*, 265 F.3d at 1003 (ruling that while a photograph is a pictorial work of authorship protected by the Copyright Act, a person's likeness and name are not). Second, the rights asserted under the state law claim must be "rights that are equivalent" to those protected by section 106 of the Copyright Act. *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir.1998) (holding that the rights protected by plaintiff's state law claims were equivalent to those protected by the Copyright Act where defendants released a cartoon and accompanying merchandise derived from plaintiff's drawings).

## A. Subject Matter of the Copyright Act

Palomar concedes that the Plans fall within the subject matter of the Copyright Act. (Defs.' Opposition to Motion to Dismiss ("Defs.' Opposition"), filed Aug. 27, 2004, at 4.) Therefore, the only remaining issue involves the "equivalency" of rights addressed by the Copyright Act to those presented by Palomar's state law claims.

## B. Equivalency of Rights

Pursuant to section 106 of the Copyright Act, a copyright owner maintains the exclusive rights of reproduction,

preparation of derivative works, distribution, and display.[5] 17 U.S.C. § 106. Therefore, "[t]o survive preemption, the state [claims] must protect rights which are qualitatively different from the copyright rights. The state claim[s] must have an 'extra element' which changes the nature of the action." *Del Madera Props. v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir.1987) (citations omitted); *see also Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir.1993) ("Preemption analysis involves determining whether the state law claim contains an element not shared by the federal law; an element which changes the nature of the action 'so that it is *qualitatively* different from a copyright infringement claim.'") (*emphasis* in original); *see also Pollstar v. Gigmania Ltd.*, 170 F.Supp.2d 974 (E.D.Cal.2000) (a state law claim "is cognizable if the claim contains an extra element which changes its nature"). Therefore, in order to determine whether Palomar's state law counterclaims are preempted by the Copyright Act, the court must precisely identify the nature of each allegation.

## 1. Unlawful Business Practices and Misappropriation Counterclaims

Palomar alleges that Aagard's use of the Plans both (1) constituted misappropria-

the general scope of copyright ... are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

5. 17 U.S.C. § 106 states that,

[T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale

or other transfer or ownership, or by rental, lease, or lending;
(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

tion and (2) violated California Business & Professions Code section 17200 (" § 17200"). California misappropriation law requires that, (a) Palomar invested substantial time, skill or money in developing the Plans; (b) Aagard appropriated and used Palomar's Plans at little or no cost to Aagard; (c) Aagard's appropriation and use of Palomar's Plans was without Palomar's authorization or consent; and (d) Palomar can establish that it has been injured by Aagard's conduct. *See U.S. Golf Ass'n v. Arroyo Software Corp.*, 69 Cal.App.4th 607, 618, 81 Cal.Rptr.2d 708 (1999) (noting that common law misappropriation falls under the "umbrella" of unfair competition).

Similarly, § 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ..." Cal. Bus. & Prof.Code § 17200 (West 2004). "Courts broadly interpret § 17200 to include 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Daly v. Viacom, Inc.*, 238 F.Supp.2d 1118, 1126 (N.D.Cal.2002), quoting *People v. McKale*, 25 Cal.3d 626, 631–632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979). The allegations supporting Palomar's misappropriation and unfair business practice counterclaims are identical— if Palomar demonstrates misappropriation, it also establishes violation of § 17200. Therefore, for purposes of this motion, the court will analyze the two counterclaims together (collectively, "unfair competition" counterclaims).

### a. Traditional and Reverse Palming Off

Palomar asserts that its state law unfair competition counterclaims contain the "extra element" necessary to survive preemption by federal copyright laws—namely, Palomar points to the goodwill and reputation its Plans garnered throughout the industry during the company's tenure. (Defs.' Counterclaim at 13, 15.) According to the allegations, Aagard's reproduction and distribution of the Plans as her own ultimately improves her reputation and competitive advantage in the home builder community, thereby undermining Palomar's reputation. (*Id.*) Palomar contends that these actions constitute palming off, which is distinct from copyright infringement and thus not preempted. (Defs.' Opposition at 7.)

■ Consequently, the preemption analysis turns on whether Palomar's counterclaims constitute "palming off," which is not preempted, or "reverse palming off," which generally is preempted. Traditional palming off "involves selling a good or service of one person's creation under the name or mark of another." *Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir.1988), citing *Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir.1981). It may be either express or implied. *Id.*

> Express [palming off] occurs when a business labels its goods or services with a mark identical to that of another enterprise, or otherwise expressly misrepresents the origin of the goods or services. Implied [palming off] involves the use of a competitor's advertising material, or a sample or photograph of the competitor's product, to impliedly represent that the product being sold is made by the competitor.

*Id.*

The legislative history of the Copyright Act states: "Section 301 [of the Copyright Act] is not intended to preempt common law protection in cases involving activities such as false labeling, fraudulent representation, and [palming off] even where the subject matter involved comes within the scope of the copyright statute." H.R. Rep. No. 94–1476, pt. 3, at 132 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748. Accordingly, traditional palming off is not preempted by the Copyright Act. *Warner*

*Bros., Inc. v. American Broad. Cos.,* 720 F.2d 231 247 (2d Cir.1983).

Conversely, reverse palming off occurs "when one party ... obtains a second party's goods, removes the second party's name, and then markets the product under its own name." *Pollstar,* 170 F.Supp.2d at 980 (citing *Summit,* 7 F.3d at 1437). Reverse palming off also encompasses situations in which a product is "modified slightly and then labeled with a different name" or implied "simply by removing or obliterating the name of the [original] source and then selling the product in an unbranded state." *Id.; Lamothe,* 847 F.2d at 1406 (citing *Smith,* 648 F.2d at 605).

Reverse palming off claims are preempted unless they allege bodily appropriation and the claimant seeks more than mere monetary damages. *See Salim v. Lee,* 202 F.Supp.2d 1122, 1127 (C.D.Cal.2002) (bodily appropriation required to permit reverse palming off claim); *see also Firoozye v. Earthlink Network,* 153 F.Supp.2d 1115, 1130 (N.D.Cal.2001) (claim is preempted where claimant seeks only damages and not the actual return of a physical piece of property).

■ Here, Aagard's alleged actions involve a hybrid of both traditional and reverse palming off. Palomar contends that Aagard acquired Palomar's Plans and sold them as if they were her own, which falls within the definition of reverse palming off. (Defs.' Counterclaim at 15 (Aagard "market[s] and sell[s] these Plans to residential home builders as if [she] conceived of, created, and/or designed these Plans ... in an effort to promote within the home developer community a reputation for creating high-quality House Design Plans").) At the same time, however, Palomar asserts that the Plans are known in the industry as "Palomar Plans." (*Id.* at 11.) Because her customers allegedly believed they were purchasing "Palomar Plans," Aagard not only misappropriated

Palomar's actual Plans, she also utilized and relied upon Palomar's industry reputation to promote her own business. These allegations constitute traditional palming off.

### b. Palming off

To the extent they allege palming off, Palomar's unfair competition counterclaims are not preempted. The Central District's recent ruling in *Butler v. Target Corp.* is instructive. 323 F.Supp.2d 1052, 1057 (C.D.Cal.2004). There, a national retail corporation used plaintiffs' "signature song" in its commercials and advertising campaigns. *Id.* The court concluded that the corporation's use of plaintiffs' actual song in the commercials involved a right equivalent to that protected by federal copyright laws. *Id.* However, to the extent that the corporation's signage and advertising confused customers into believing plaintiffs endorsed the corporation's stores, the court ruled that plaintiffs' claim contained an extra element that qualitatively changed the nature of the allegation; to that extent, the claim was not preempted by federal law. *Id.* at 1057–58.

Similarly, in this case, Palomar alleges that Aagard relied upon Palomar's goodwill and reputation; she marketed the "distinctive" Plans to promote her own business and gain a competitive edge in the industry. (Defs.' Counterclaim at 9, 13, 15.) Consequently, many home builders believed they were purchasing a Palomar Plan—possibly with Palomar's approval—when they entered into business with Aagard. (*Id.* at 13, 15.) Reading the allegations in a light most favorable to Palomar, Aagard's marketing confused consumers into believing they were receiving both a Palomar Plan and Palomar's approval. Based upon these allegations, Palomar's palming off counterclaims contain the requisite "extra element." To that extent, the counterclaims are not preempted by the Copyright Act.

### c. *Reverse Palming off*

In contrast, to the extent they allege reverse palming off, Palomar's unfair competition counterclaims are preempted. In 2003, the United States Supreme Court ruled that the original creator of communicative products—"products that are valued not primarily for [their] physical qualities but for the intellectual content [they convey] such as a book or video"—could not support a reverse palming off claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because such a claim would conflict with federal copyright law. *Dastar v. Twentieth Century Fox,* 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003).[6]

Similarly, courts in this Circuit previously held that claims asserted pursuant to California unfair competition laws are "substantially congruent" to claims filed under the Lanham Act. *See Cleary v. News Corp.,* 30 F.3d 1255, 1262–63 (9th Cir.1994) (noting that the test for both is whether the public is likely to be deceived or confused); *see also Salim,* 202 F.Supp.2d at 1126 n. 2. Accordingly, state law claims which rely upon reverse palming off of communicative products also conflict with—and are, therefore, preempted by—federal copyright law. *Williams v. UMG Recordings,* 281 F.Supp.2d 1177, 1183–86 (C.D.Cal.2003).

However, because the Supreme Court's ruling applied only to communicative products, a narrow exception remains in the Ninth Circuit, which continues to permit claims for reverse palming off of tangible products pursuant to the Lanham Act.[7]

*Williams,* 281 F.Supp.2d at 1183–86. Even so, this exception is limited: "where a [claimant] is only seeking damages from a [counterclaim] defendant's reproduction of a work—and not the actual return of a physical piece of property—the claim is [still] preempted." *Firoozye,* 153 F.Supp.2d at 1130.

Here, Palomar is not seeking return of the Plans, which it provided Aagard in order to facilitate her work. (Defs.' Counterclaim at 9–10.) Instead, Palomar seeks damages and injunctive relief for Aagard's unauthorized reproduction of—and profit from—the Plans. This does not fall within the exception recognized in this Circuit for tangible products. Accordingly, to the extent that Palomar asserts reverse palming off, its counterclaims are preempted by the Copyright Act.

### 2. *Intentional Interference with Prospective Economic Advantage Counterclaim*

 Aagard next seeks dismissal of Palomar's intentional interference with prospective economic advantage counterclaim. Palomar contends that Aagard's distribution of the Plans diverted customers away from its business. In order to support a claim for intentional interference with economic advantage, Palomar must allege: (a) an economic relationship between Palomar and some third person containing the probability of future economic benefit to Palomar; (b) knowledge by Aagard of the existence of the relationship; (c) intentional acts on the part of Aagard designed to disrupt the relationship; (d) actual disruption of the relationship; and (e) damages to Palomar proximately caused by Agard's

---

**6.** On remand, the district court dismissed the state law claims with prejudice. *Twentieth Century Fox Film Corp. v. Dastar Corp.,* 2003 WL 22669587, 2003 U.S. Dist. LEXIS 21194 (C.D.Cal.2003).

**7.** Based on *Dastar,* the *Williams* Court noted that if defendants had misappropriated plaintiff's tangible products ("if Dastar had bought some of New Line's . . . videotapes and merely repackaged them as its own"), the Lanham Act claim would be sustained. *Williams,* 281 F.Supp.2d at 1182.

actions. *Conkle v. Jeong,* 73 F.3d 909, 918 (9th Cir.1995), citing *Blank v. Kirwan,* 39 Cal.3d 311, 216 Cal.Rptr. 718, 703 P.2d 58 (1985). Because the law respects the "right to conduct business in competition with that of another," the complaint must include allegations of knowledge and intent. *Summit,* 7 F.3d at 1442; *see also Weststeyn Dairy 2 v. Eades Commodities Co.,* 280 F.Supp.2d 1044, 1089–90 (E.D.Cal. 2003) (plaintiff must demonstrate that "defendant's interference was wrongful by some measure beyond the fact of the interference itself") (internal citations omitted).

 Aagard contends that because Palomar failed to specifically identify existing relationships with third parties, the counterclaim for intentional interference should be dismissed. However, this court previously refused to dismiss an intentional interference claim where the non-moving party alleged interference but failed to specifically identify existing third parties with whom there was a business relationship. *Janda v. Madera Cmty. Hosp.,* 16 F.Supp.2d 1181, 1189 (E.D.Cal.1998) (although plaintiff was not required to expressly identify existing third parties, he was still bound by Fed.R.Civ.P. 11 sanctions). There, the court denied the motion to dismiss with regard to *existing* third party relationships and gave plaintiff leave to amend the complaint to specifically identify *future* third parties. *Id.* at 1189–90. Similarly, here, Palomar has alleged interference but has not specifically identified existing parties. This is sufficient to satisfy federal pleading requirements. *NL Industries,* 792 F.2d at 898; Fed.R.Civ.P. 8(a).

 Nonetheless, Palomar's intentional interference counterclaim is preempted by federal copyright laws. The Copyright Act protects rights of reproduction, preparation of derivative works, distribution,

and display. 17 U.S.C. § 106. Although the Ninth Circuit has not addressed this specific issue, the Second Circuit provides persuasive authority that the rights protected by the Copyright Act are synonymous to those asserted in a tortious interference with contractual relations claim:

> In both cases, it is the act of unauthorized publication which causes the violation. The enjoyment of benefits from derivative use is so intimately bound up with the right itself that it could not possibly be deemed a separate element.... [T]he fact that cross-appellants pleaded additional elements of awareness and intentional interference, not part of a copyright infringement claim, goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental non-equivalence between the state and federal rights implicated.

*Harper & Row Publishers, Inc. v. Nation Enters.,* 723 F.2d 195, 201 (2d Cir.1983), *rev'd on other grounds,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

Here, Palomar's intentional interference with prospective economic advantage counterclaim does not involve a contractual relationship. Nonetheless, much like the tortious contractual interference claim presented in *Harper,* it alleges violation of essentially the same rights provided for in the Copyright Act. Palomar claims an "extra element"—namely, loss of business as a result of Aagard's sale of Palomar's Plans. However, federal copyright laws already protect the exclusive right of distribution. Therefore, Aagard's motion to dismiss counterclaim four is GRANTED.

### 3. *Breach of Fiduciary Duty Counterclaim* [8]

 Finally, Aagard moves to dismiss Palomar's breach of fiduciary duty

---

**8.** Alternatively, Palomar requests permission

to amend its Counterclaims to assert a cause

counterclaim. "The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *Bear Stearns & Co. v. Daisy Sys. Corp. (In re Daisy Sys., Corp.)*, 97 F.3d 1171, 1177 (9th Cir.1996), quoting *Beery v. State Bar*, 43 Cal.3d 802, 239 Cal.Rptr. 121, 739 P.2d 1289 (1987). The existence of a fiduciary relationship depends on the circumstances of each case and is determined by the trier of fact. *Id.* at 1178, citing *Kudokas v. Balkus*, 26 Cal.App.3d 744, 750, 103 Cal.Rptr. 318 (1972).

Initially, Aagard argues that the breach of fiduciary duty counterclaim should be dismissed because Palomar failed to assert the existence of a fiduciary duty. However, upon a motion to dismiss for failure to state a claim upon which relief can be granted, the court must construe the allegations in the light most favorable to the non-moving party. *NL Industries*, 792 F.2d at 898. Palomar alleges that it hired Aagard as an independent contractor and that by virtue of that relationship Aagard was entrusted with "copyrightable Plans." [9] (Defs.' Opposition to Motion to Dismiss at 13.) Palomar contends that inherent in the parties' relationship was Aagard's obligation to refrain from claiming credit for, or ownership of, Palomar's Plans. (Def.s' Answer and Counterclaim, filed May 26, 2004 at 10.) Based upon this trust and confidence, Palomar asserts that the parties maintained a fiduciary relationship. (*Id.* at 16.) Pursuant to Fed. R.Civ.P. 12(b)(6), the court must accept this non-conclusory allegation as true. Therefore, Palomar's allegations are suffi-

cient to support a counterclaim for breach of fiduciary duty.

In the alternative, Aagard asserts that Palomar's breach of fiduciary duty counterclaim is preempted. In support of her position, Aagard cites *Watermark Publrs. v. High Tech. Sys.*, 1997 U.S. Dist. LEXIS 22512 (S.D.Cal.1997), as "an analogous holding" involving negligence. (Pl.'s MTD at 14.) Upon a claim that the defendant used plaintiff's maps in its display, the *Watermark* court ruled that the "only possible basis for a duty to protect another from copyright infringement—if such a duty can exist—is in copyright law; thus, the alleged existence of this duty is not an 'extra element.'" *Id.*

Unlike the present case, however, the parties in *Watermark* did not know one another prior to the alleged infringement. The plaintiff only learned of defendant's actions upon entering an establishment, which contained one of the displays. Here, Aagard was an independent contractor employed by Palomar. She was familiar with Palomar's business, reputation, and alleged proprietary interest in the Plans. Similarly, Palomar does not contend that Aagard's duty was to protect Palomar from copyright infringement. Instead, Palomar argues that Aagard owed a duty to refrain from using its Plans to promote her own business and industry reputation. Therefore, the *Watermark* ruling is distinguishable from the present case.

Aside from *Watermark*, the parties fail to cite case law supporting their positions on this question. However, several courts have noted that preemption does not apply to state unfair competition claims that include an "extra element" involving breach

___

9. Palomar did not register the disputed Plans with the United States Copyright Office until May 25, 2004. (Ballard Declaration at 2.)

of action for breach of contract. (Def.s' Opposition at 13.)

of fiduciary duties. *Daboub v. Gibbons,* 42 F.3d 285, 289–90 (5th Cir.1995) (holding that state law claims were preempted by the Copyright Act because plaintiffs failed to allege "any element, such as an invasion of personal rights or a breach of fiduciary duty, which render [their claims] different in kind from copyright infringement"); *Kregos v. Assoc'd Press,* 3 F.3d 656, 666 (2d Cir.1993) ("unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to satisfy the extra-element test and avoid § 301 preclusion"). Therefore, reading the allegations in the light most favorable to Palomar, the counterclaim for breach of fiduciary duty survives preemption. Aagard's motion to dismiss counterclaim six is DENIED.

### 4. *Declaratory Relief under 28 U.S.C. §§ 2201 and 2202*

Both parties appear to agree that Palomar's declaratory relief counterclaim is only preempted to the extent that the state law counterclaims are preempted. (Pl.'s MTD at 14; Defs.' Opposition at 13.) Therefore, to the extent preempted claims form the basis for declaratory relief, the declaratory relief request is also preempted.

### CONCLUSION

For the foregoing reasons, Aagard's motion to dismiss counterclaims three and five, for misappropriation and violation of Cal. Bus. & Prof.Code § 17200, is GRANTED in part, DENIED in part. The motion to dismiss counterclaim four, for intentional interference with prospective economic advantage, is GRANTED; however, the motion to dismiss counterclaim six, for breach of fiduciary duty, is DENIED. Finally, to the extent preempted claims for the basis for declaratory relief, Aagard's motion to dismiss counter-claim seven, for declaratory relief, is also GRANTED.

IT IS SO ORDERED.